A96A0308. CRIDER v. ZURICH INSURANCE COMPANY et al.

(474 SE2d 89)

BIRDSONG, Presiding Judge.

This is a negligence suit for damages for injuries sustained when appellant/plaintiff William Darrell Crider was injured while a detainee in the custody of the Department of Corrections, State of Georgia, at the Northwest Detention Center in Cedartown, Georgia. Appellant appeals the trial court's grant of summary judgment in favor of appellees/defendants Zurich Insurance Company, Polk County, Georgia, and Polk County Board of Commissioners.

On September 8, 1992, appellant was assigned to a tree trimming work detail in Polk County and, at the direction of a Department of Corrections' guard, was standing in the front bucket of a backhoe that was elevated above the ground. The bucket unexpectedly dropped and momentarily suspended appellant in mid-air; it apparently was re-elevated immediately, but appellant was thrown or fell from the bucket onto the pavement. As a result of this incident, appellant is paralyzed from the neck down. The backhoe was owned by Polk County and was operated by a Polk County employee assigned to work on the tree trimming project.

The trial court granted summary judgment to appellees on the grounds that the county had no insurance covering appellant's claim and sovereign immunity therefore had not been waived. *Held*:

1. The applicable summary judgment standard is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474).

2. "In 1991, the constitutional doctrine of sovereign immunity was amended to extend sovereign immunity 'to the state and all its departments and agencies,' and this immunity is to prevail except as specifically provided therein." *Gilbert v. Richardson*, 264 Ga. 744, 746 (1) (452 SE2d 476), citing Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). This amendment became effective on September 1, 1991 (id.) and is applicable in this case. Counties are included within the definition of " 'agents or departments of the state' " as contemplated by the 1991 amendment, and sovereign immunity extends to counties, unless specifically waived by an Act of the General Assembly. *Gilbert* at 746-747 (2). "[S]overeign immunity is waived by any legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver." Id. at 748 (3).

"OCGA § 33-24-51 provides that a county waives its governmen-

tal [sovereign] immunity to the extent of the amount of liability insurance purchased for the negligence of its officers, agents, servants, attorneys, or employees arising from the use of a *motor vehicle.*" (Emphasis supplied.) Id. at 748-749 (4); accord *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581). OCGA "§ 33-24-51 (b) provides both a waiver of sovereign immunity and the extent of such waiver and is, therefore, a legislative act waiving sovereign immunity as contemplated by the 1991 amendment." *Gilbert*, supra at 751 (4). As OCGA § 33-24-51 (b) in effect provides a legitimate statutory exception to the constitutionally recognized power of sovereign immunity, the statute is subject to strict construction. Compare *Bailey v. Williams*, 214 Ga. 702, 703 (107 SE2d 209) which holds that an exception to a statutory requirement must be strictly construed.

Pretermitting all other questions raised by appellant is the question whether a backhoe is a "motor vehicle" within the meaning of OCGA § 33-24-51 (a) (sovereign immunity statute) for which insurance to cover liability for damages may be secured and provided. If a backhoe is not such a vehicle, then there exists no waiver of county sovereign immunity in this case, as a matter of law, because according to the waiver provisions of OCGA § 33-24-51 (b) only the purchase of "insurance authorized by subsection (a)" of the Code section results in the waiver of sovereign immunity by the county.

We conclude that this issue is not controlled by the narrow definitions of "motor vehicle" contained in the automobile insurance statutes, because, herein, coverage is sought under a general liability policy, not an automobile insurance policy. Rather, this determination is controlled by the intent of the legislature in passing the sovereign immunity waiver statute and by the language of the general liability insurance contract itself.

OCGA § 33-24-51 (a) provides that "a county . . . is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both *arising by reason of ownership, maintenance, operation, or use of any motor vehicle* by the . . . county." (Emphasis supplied.) Subsection (b) provides that by the purchase of such insurance a county waives its governmental immunity to the extent of the amount of liability insurance purchased. See OCGA § 33-24-51 (b).

The legislature's purpose and intent in providing for a waiver of the county's sovereign immunity is essential to our interpretation as we are charged with construing statutes in order to effectuate such intent and purpose. See OCGA § 1-3-1 (a). Without the waiver provided in OCGA § 33-24-51, Georgia's Constitution provides for the extension of sovereign immunity to "the state and all of its departments and agencies." Ga. Const. 1983, Art. I, Sec. II, Par. IX (e). The

intent of the legislature in enacting a waiver of sovereign immunity was to allow for the compensation of parties injured by employees and agents of the state through the purchase of liability insurance where recovery is otherwise barred.

Automobile liability policies are purchased to provide coverage consistent with the statutes governing such policies, including the definition of a motor vehicle as being *designed primarily for operation upon the public streets, roads and highways.* OCGA § 33-34-2; *Hinton v. Interstate Guaranty Ins. Co.*, 220 Ga. App. 699 (470 SE2d 292).

General liability policies are purchased primarily to provide coverage for incidents other than those covered under automobile liability policies. Where, as here, the subject vehicle would not fit the definition of motor vehicle under the automobile liability statutes, as it was not designed for and used primarily on public streets, coverage may be available under the general liability policy if (1) the waiver of sovereign immunity for such liability was authorized by OCGA § 33-24-51 (a); and (2) coverage is provided by the terms of the subject policy.

In determining the intention of the legislature in adopting OCGA § 33-24-51 (a), we note that it covers incidents "arising by reason of ownership, maintenance, operation, or use of any motor vehicle." Clearly the present incident involves the above elements. Had the legislature intended to limit sovereign immunity waiver to the operation of motor vehicles designed for and used primarily upon the public streets they could easily have provided for the application of the definition of motor vehicle as contained in the automobile liability insurance statutes in the interpretation of the sovereign immunity waiver statute, but they did not do so.

Inasmuch as the county operates numerous vehicles for which coverage would not be available under the automobile liability insurance statutes and policies, it is not unreasonable to assume that it was their intention to provide coverage for incidents involving such vehicles through the purchase of general liability insurance coverage. It would be inconsistent with the purpose of the sovereign immunity waiver statute to hold that the county was not authorized to purchase coverage to provide benefits to victims of motor vehicle incidents simply because the involved motor vehicle was not designed primarily to be used on the highway. Such an interpretation would prefer one class of victims over another where both are injured by motor vehicles, with no mandate from the legislature to do so.

The county's waiver of sovereign immunity by the purchase of general liability insurance coverage for the type of incident herein involved is clearly authorized under OCGA § 33-24-51 (a). Whether the statute is construed narrowly or broadly, it is the insurance con-

tract which determines whether coverage exists with the existence of a waiver of sovereign immunity being dependent thereon.

The subject general liability insurance contract does not exclude coverage for injury or damage arising out of the use of a backhoe. Indeed, it specifically provides coverage applicable to the present case, for the use of mobile equipment. "Mobile equipment," in pertinent part, is defined in the contract as "any of the following types of land vehicles, including any attached machinery or equipment: a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads; . . . d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted: (1) Power cranes, shovels, loaders, diggers or drills; or (2) Road construction or resurfacing equipment such as graders, scrapers or rollers." Furthermore, as Zurich drafted the insurance contract, it will be construed against Zurich. As the county purchased general liability insurance coverage authorized by OCGA § 33-24-51 (a), we find that the trial court erred in granting summary judgment to the appellees.

*Judgment reversed. Blackburn, J., concurs. Beasley, C. J., concurs fully and specially.*

BEASLEY, Chief Judge, concurring specially.

I concur fully but wish to distinguish *Pate v. Turner County*, 162 Ga. App. 463 (291 SE2d 400) (1982), upon which case both appellees rely. The backhoe, which was being operated by a driver on a public roadway for the purpose of transporting a passenger in order for him to accomplish his assigned task, differs significantly from the sanitary landfill compactor in *Pate*.

The compactor was not designed to haul passengers or freight and the metal wheels required it to be driven on soil or dirt. Unlike the backhoe, it could not be driven on a hard surface such as a road. The backhoe's four wheels are rubber and its scoop is for the purpose of moving or lifting and transporting soil or other objects in quantities greater than a person could do at once with a hand-held container. It was being used to elevate Crider so he could cut tree limbs which were too high to be cut from the roadway or from the bed or roof of the dump truck also being used for the project. He was thrown into the air and fell onto the roadway.

*Pate* is also different in another significant respect. The policy there did not cover the vehicle. The court stated that it "was not listed as a vehicle for which liability insurance was purchased." Peculiarly, the court did not end the analysis there but stated that the immunity would not apply if the vehicle was the type for which immunity-waiving insurance could be purchased under OCGA § 33-24-51. There is no waiver of immunity if payment is not required

under the contract. *Ward v. Bulloch County*, 258 Ga. 92, 93 (365 SE2d 440) (1988). "Where the plain terms of the policy provide that there is no coverage for a claim, or where the insurer has established in a declaratory judgment action that it is not obligated to pay a claim, there is no waiver of sovereign immunity. [Cits.]" *Bd. of Regents &c. of Ga. v. Daniels*, 208 Ga. App. 195, 196 (430 SE2d 45) (1993), rev'd on other grounds, 264 Ga. 328 (446 SE2d 735) (1994).[1]

The court went on in *Pate* nevertheless to analyze whether the compactor was a "motor vehicle" within the contemplation of the statute; if it was, there was a waiver, and if it was not, then the defense of sovereign immunity was not waived. The court construed the statute's words and adopted several definitions of "motor vehicle" which were used in other parts of statutory law as it then existed. The Official Code of Georgia Annotated was not applied, as it was not yet in effect. OCGA §§ 1-1-1; 1-1-9 (effective November 1, 1982). Without explaining a rationale, the court chose the definitions from the Georgia Motor Vehicle Accident Reparations Act and Chapter 68 of the unofficial Georgia Code Annotated, which it described as dealing with "licenses, registration and operation of motor vehicles." Applying those definitions, which it gave to the statute authorizing the purchase of insurance by municipalities, counties, and other political subdivisions of the state, it is not difficult to understand its conclusion that the statute did not include the landfill compactor.

But are these the proper definitions to apply in this case? The Reparations Act, known as the No-Fault Act, was repealed in 1991 and a new reparations act was adopted. Ga. L. 1991, p. 1608, § 1.12. The definition of "motor vehicle" was essentially readopted. OCGA § 33-34-2 (1). In *Daniels v. Decatur County*, 212 Ga. App. 378, 380 (2) (441 SE2d 790) (1994), aff'd *Decatur County v. Daniels*, 264 Ga. 822 (452 SE2d 511) (1995), we recognized that there are variations between the Georgia Motor Vehicle Accident Reparations Act (OCGA § 33-34-2) and the statute providing waiver of immunity by way of insurance (OCGA § 33-24-51). They are not coextensive.

The *Pate*-referenced definition in Chapter 68 is now OCGA § 40-1-1 (33) but has different wording: " 'Motor vehicle' means every vehicle which is self-propelled." The other word referenced in Chapter 68, "vehicle," is now defined in OCGA § 40-1-1 (75): " 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used

---

[1] Although *Ward* and *Bd. of Regents* involve the immunity of the state under Art. I, Sec. II, Par. IX of the Constitution, rather than a county's immunity under Art. IX, Sec. II, Par. IX, the law is the same in respect to the extent of the waiver. What is expressly provided in the Constitution for the state waiver is provided in the statute, OCGA § 33-24-51 (b), for the county waiver.

exclusively upon stationary rails or tracks."

The Constitution of Georgia permits the General Assembly to "waive the immunity of counties, municipalities, and school districts by law." Art. IX, Sec. II, Par. IX. An exercise of this authority is found in the statute applicable here. *Daniels v. Decatur County*, supra at 379 (1). By OCGA § 33-24-51 (a), the General Assembly authorizes a political subdivision to provide liability insurance for bodily injury or death "arising by reason of ownership, maintenance, operation or use of any motor vehicle" by the political subdivision, "whether in a governmental undertaking or not." The obvious purpose is a humane one, to provide relief for people who are injured or killed in certain instances, when otherwise they would be without remedy because the governmental unit is immune from suit.

As recognized in *Pate*, the legislature did not define a "motor vehicle" for the purpose of this statute, although for other specific purposes strewn throughout the Code it provided a variety of definitions tailored to whatever the legislature's goal was in that particular statute.[2] Here the object is coverage, not non-coverage, and the legislature does not limit the motor vehicles to those which require state registration or licensing or which are intended primarily for use upon the public highways. It is common knowledge that "[a] municipal corporation, a county, or any other political subdivision of this state" would own, maintain, operate, or use many motor vehicles other than cars, buses, and trucks. It is further ordinarily known that persons could be injured or killed by such vehicles on the roadways.

The term should therefore be broadly construed, to achieve the purpose of the statute and because no limiting definition is given, as in other instances. OCGA § 1-3-1; *City of Calhoun v. North Ga. EMC*, 233 Ga. 759, 761 (1) (213 SE2d 596) (1975). As repeated in that case, "the cardinal rule to guide the construction of laws is, first, [as stated in OCGA § 1-3-1 (a),] to ascertain the legislative intent and purpose in enacting the law and then to give it that construction which will effectuate the legislative intent and purpose." (Punctuation omitted.)

---

[2] See, e.g., OCGA § 10-1-2 (5) (Retail Installment & Home Solicitation Sales Act); OCGA § 10-1-31 (4) (Motor Vehicle Sales Finance Act); OCGA § 10-1-622 (10) (Georgia Motor Vehicle Franchise Practices Act); OCGA § 12-9-43 (17) (Georgia Motor Vehicle Emission Inspection & Maintenance Act); OCGA § 16-5-44.1 (2) (Anti-motor Vehicle Hijacking Act); OCGA § 16-8-82 (2) (Motor Vehicle Chop Shop & Stolen & Altered Property Act); OCGA § 40-5-142 (19) (Uniform Commercial Driver's License Act); OCGA § 40-11-1 (2) (Abandoned Motor Vehicles Title); OCGA § 43-13-2 (4) (Driver Training School License Act); OCGA § 43-47-2 (3) (Used Car Dealers' Registration Act); OCGA § 43-48-2 (7) (Used Motor Vehicle Dismantlers, Rebuilders, & Salvage Dealers Registration Act); OCGA § 46-1-1 (16) (Public Utilities & Public Transportation Title); OCGA § 48-5-440 (4) (Ad Valorem Taxation of Motor Vehicles & Mobile Homes Title); OCGA § 48-9-2 (10) (A), (B) (Motor Fuel Tax Law); OCGA § 48-9-30 (3) (A), (B), (C) (Road Tax on Motor Carriers Title).

Id. In addition, "[s]tatutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation." *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987); OCGA § 1-3-1 (b). "[A] statute is to be construed in accordance with its real intent and meaning and not so strictly as to defeat the legislative purpose." (Citation and punctuation omitted.) *Blank v. Collins*, 260 Ga. 70, 71 (2) (389 SE2d 493) (1990).

According to The American Heritage Dictionary (2nd College ed. 1985), a motor vehicle is "a self-propelled, wheeled conveyance that does not run on rails." The backhoe in this case would also come within the definitions provided in OCGA §§ 40-1-1 (75) and 40-1-1 (33), if some selective application of legislative definitions for other purposes is appropriate. Those definitions govern the general regulation of "Motor Vehicles and Traffic" in Title 40. The definition in OCGA § 40-1-1 (33) was applied to include a medium-sized Ford tractor for the purpose of sentencing a thief of a "motor vehicle" in violation of OCGA § 16-8-12 (a) (4) (A), in *Browning v. State*, 207 Ga. App. 547, 549 (3) (428 SE2d 441) (1993). If it can be used to distinguish between felony and misdemeanor sentence authorization in a criminal statute, which must be strictly construed, *Doe v. Bd. of Regents &c. of Ga.*, 215 Ga. App. 684, 688 (3) (452 SE2d 776) (1994), it should apply as well to insurance coverage when no narrower definition is supplied by the legislature. In *Travelers Indem. Co. v. Whalley Constr. Co.*, 160 Ga. App. 438 (287 SE2d 226) (1981), the Court in construing a Georgia Infirmary Non-Profit Housing Corporation insurance policy ("known as an apartment owner's property liability policy") held that a mobile crane was a covered vehicle. The policy did not define "vehicle" but did state that it did not insure "[a]ny vehicle or machine licensed for use on [a] public thoroughfare."

The backhoe clearly comes within at least some of the other definitions expressly provided by the legislature for other purposes, such as OCGA §§ 16-5-44.1, 40-11-1 (2), and 43-48-2. Had the legislature intended the authorization for insurance to be limited to instances where human life and limb are adversely affected by motor vehicles required to be registered and licensed *only*, or *only* for those designed primarily for operation on the public streets, roads and highways, and not including other motor vehicles typically owned by governmental units which are just as likely to cause injury or death, it could have so provided. Moreover, what it did encompass in the statute was "*any* motor vehicle"; we cannot ignore the word "any."

It is not within our realm of authority to pick and choose from the variety of definitions formulated for other specific subject matters which the legislature was addressing. See generally *City of Ros-*

*well v. City of Atlanta*, 261 Ga. 657 (1) (410 SE2d 28) (1991). Nor does the law allow us to import a limitation not otherwise appearing. *Howze v. State*, 201 Ga. App. 96, 97 (410 SE2d 323) (1991).

The insurance in this case provides general liability coverage; it is not an automobile policy. Motor vehicle accident insurance, which is governed by Chapter 34 of the title on insurance, has a definition in OCGA § 33-34-2 (1) for "motor vehicle" as the term is "used in [that] chapter," which as stated earlier is known as the Georgia Motor Vehicle Accident Reparations Act. OCGA § 33-34-1. On the other hand, OCGA § 33-24-51 (a) does not limit the governmental unit to the purchase of motor vehicle liability insurance under Chapter 34. In *Gilbert v. Richardson*, 264 Ga. 744, 751 (5) (452 SE2d 476) (1994), the Supreme Court held that a county's purchase of a GIRMA (Georgia Interlocal Risk Management Agency) liability coverage agreement "covering the negligent acts of its employees constitutes the purchase of insurance as contemplated by § 33-24-51 (b)." Authority for this coverage is not under the Insurance Title of the Code (no. 33) but rather under the Local Government Title (no. 36). So there is no reason to limit the definition of "motor vehicle" as used in OCGA § 33-24-51 (b) to the definition provided in a different part of the Insurance Title just because they are both assembled under the Insurance Title. The codifiers, not the General Assembly, put them together. See Ga. L. 1960, p. 289, § 1; Ga. L. 1985, p. 1054, § 1. In *McLemore v. City Council of Augusta*, 212 Ga. App. 862, 863 (2) (b) (443 SE2d 505) (1994), we held that OCGA § 33-24-51 was *not* limited to automobile liability policies and that the general liability policy in that case *was* a policy "within the meaning of OCGA § 33-24-51."

Therefore, as in *Gilbert* and *McLemore*, Polk County "has waived its sovereign immunity to the extent of its liability coverage," *Gilbert*, supra at 752, as coextensive with the scope of the statute. *Winston v. City of Austell*, 123 Ga. App. 183, 184 (179 SE2d 665) (1971); *Revels v. Tift County*, 235 Ga. 333, 335 (4) (219 SE2d 445) (1975). See, e.g., *Woodard v. Laurens County*, 265 Ga. 404, 405 (1) (456 SE2d 581) (1995). There it was held that although the county had coverage under a policy of liability insurance, the waiver provided in OCGA § 33-24-51 (b) did not lift the immunity defense because plaintiffs did not allege negligent use of a motor vehicle but rather negligent inspection and maintenance of a stop sign. OCGA § 33-24-51 (b) expressly provides the waiver.

The policy does not exclude coverage for injury involving the backhoe, but only to " 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." Thus, the coverage authorized by the statute, which

when purchased waives sovereign immunity to that extent, includes that which the policy provided for here. As to this incident, they coincide. To agree with the insurer would mean that the general liability insurance which it sold to the county for a premium covered that for which the county had sovereign immunity.

DECIDED JUNE 27, 1996 —
RECONSIDERATION DENIED JULY 10, 1996 — 

*Doffermyre, Shields, Canfield, Knowles & Devine, Foy R. Devine, C. Michael Conroy*, for appellant.
*Duncan & Mangiafico, George E. Duncan, Jr.*, for appellees.

