## A07A2351. WILLIAMS v. WHITFIELD COUNTY.
(656 SE2d 584)

PHIPPS, Judge.

After becoming involved in a motorcycle accident at the intersection of two Whitfield County roads, Paul Williams sued the county and employees of its public works department for negligence in failing to properly place road signs warning of the closure of one of the roads. Whitfield County moved for summary judgment, arguing that signs warning of the road closure were properly placed at the time of the accident and that, in any event, it had not waived its sovereign immunity from suit. Williams opposed the county's motion, arguing that the county had waived its sovereign immunity by use of a parked motor vehicle to prevent motorists from running off the roadway.

The trial court granted summary judgment to Whitfield County. The court ruled that although there are issues of fact as to whether signs warning of the road closure were properly placed, the county did not waive its sovereign immunity as it appears without dispute that there was no motor vehicle in use at the time of, or involved in, the motorcycle accident. Williams appeals. We affirm.

On appeal from the denial or grant of summary judgment, the appellate court "conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[1] The facts here, unless otherwise noted, are undisputed.

On May 7, 2004, at approximately 7:40 p.m., Williams was operating a motorcycle in a westerly direction along Chattanooga Road approaching its intersection with Old Tunnel Hill Road. Chattanooga Road's westbound approach to that intersection is a blind leftward curve on a downgrade. At the time in question, Williams was following two other motorcycles operated by friends. Unbeknownst to Williams and his friends, the part of Chattanooga Road lying west of its intersection with Old Tunnel Hill Road had been closed, and a barricade with a "road closed" sign had been placed in the westbound lane of travel. The operator of the first motorcycle went around the barricade and stopped further down the road. The operator of the second motorcycle stopped in the intersection. But when he applied

---

[1] *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003) (citation and punctuation omitted).

the brakes of his motorcycle, Williams slid along the paved edge of the roadway for some distance and onto the graveled, right-hand shoulder of the road. He then hit a hole in the gravel and slid off a steep embankment. As a result, he sustained injuries requiring hospitalization and surgery and damaged his motorcycle.

In his complaint, Williams charged the county with negligence for not properly placing road signs warning motorists of the road closure at distances prescribed by the Manual of Uniform Traffic Control Devices (MUTCD). According to Williams and an operator of one of the other motorcycles, there was only one "road closed" sign posted along Chattanooga Road for westbound travelers and it was within the curve of the road approximately 500 feet from the barricade. According to personnel of the public works department, "road closed ahead" signs were in place at approximately 1,500, 1,000, and 500 feet from the intersection of the roads, in accordance with the MUTCD.

The closing of Chattanooga Road was necessitated by a project undertaken by the Whitfield County Public Works Department to replace storm water drainage piping at various locations in the county. To perform the construction work, the county hired a private contractor, Greenstar, LLC. Greenstar owned and operated a tracked Caterpillar excavator that it used in working on the road. As part of its agreement with the county, Greenstar maintained a policy of general commercial and automobile liability insurance that listed the excavator.

At the time of Williams's accident, the excavator was parked partially in the westbound lane of Chattanooga Road approximately 300 feet west of the "road closed" barricade. According to Williams, the excavator had been parked there to prevent motorists from running off the road as part of an overall safety plan for the project for which the county had assumed partial responsibility.

> The doctrine of sovereign immunity protects governments from legal action unless they have waived their immunity from suit. The immunity, at least for counties, may only be waived by a legislative act which specifically provides that sovereign immunity is waived and the extent of such waiver.[2]

OCGA § 33-24-51 is such a statute.[3] As originally enacted and in its current form, OCGA § 33-24-51 (a) authorizes cities and counties to

---

[2] *Smith v. Chatham County*, 264 Ga. App. 566, 567 (1) (591 SE2d 388) (2003) (footnotes omitted).

[3] See *Chamlee v. Henry County Bd. of Ed.*, 239 Ga. App. 183, 184-185 (2) (521 SE2d 78) (1999).

secure insurance to cover liability for damages on account of bodily injury, death, and property damage arising by reason of the city or county's "ownership, maintenance, operation, or use of any motor vehicle . . . under its management, control, or supervision, whether in a governmental undertaking or not."[4] As originally enacted, OCGA § 33-24-51 (b) waived sovereign immunity of the city or county only to the extent that it had purchased insurance providing liability coverage for "the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties."[5] Under an amendment to OCGA § 33-24-51 enacted in 2002 but not effective until 2005, subsection (b) continues to waive the sovereign immunity of local government entities under the foregoing circumstances.[6] And even where a motor vehicle owned or leased by a county is not insured, the 2002 amendment waives sovereign immunity within the limits set forth in OCGA § 36-92-2 (a) for a loss arising out of claims for the negligent use of the vehicle.[7] Because the accident in this case occurred in 2004, the pre-2002 version of OCGA § 33-24-51 is applicable here.

In accordance with *Crider v. Zurich Ins. Co.*,[8] the trial court concluded that the tracked Caterpillar excavator in this case is a "motor vehicle" within the meaning of OCGA § 33-24-51 for which insurance to cover liability for damages could be secured. Whitfield County argues that the excavator is more like the Caterpillar sanitary landfill compactor found not to be a "motor vehicle" within the meaning of OCGA § 33-24-51 in *Pate v. Turner County*,[9] rather than the backhoe found to be such a motor vehicle in *Crider*. Although that may well be so, we have not been cited to any evidence of record that explains the design of the excavator. The record does show, however, that the excavator, like the backhoe in *Crider* and unlike the compactor in *Pate*, was insured under a motor vehicle liability insurance policy providing potential coverage for the incident. Under these circumstances, we find no error in the trial court's conclusion that the excavator qualifies as a "motor vehicle" within the meaning of OCGA § 33-24-51.

As argued by Williams, under OCGA § 33-24-51 (a), liability insurance coverage may be purchased for damages arising "by reason

[4] Id. at 185, n. 1 (emphasis omitted).

[5] Ga. L. 1960, p. 289, § 1; *Chamlee*, supra at 184-185 (2).

[6] Ga. L. 2002, p. 579, § 1; see *Scott v. City of Valdosta*, 280 Ga. App. 481, 483-484 (1) (634 SE2d 472) (2006).

[7] See OCGA § 36-92-1 (2); *Scott*, supra.

[8] 222 Ga. App. 177 (474 SE2d 89) (1996).

[9] 162 Ga. App. 463 (291 SE2d 400) (1982).

of ownership, maintenance, operation, *or* use of"[10] the motor vehicle. This statute, like the statute under consideration in *Rite-Aid Corp. v. Davis*,[11] is phrased in the disjunctive. Here, however, it appears without dispute that Williams's claims did not arise from the ownership, maintenance, or operation of the vehicle. The question, therefore, is whether the claims arose from the use of the vehicle.

As noted in *Harry v. Glynn County*,[12] "[w]hether an event arises from the 'use' of a motor vehicle depends largely on the circumstances, and a bright-line definition is elusive."[13] As further held in *Saylor v. Troup County*,[14] "[t]he question to be answered is whether the injury 'originated from,' 'had its origin in,' 'grew out of,' or 'flowed from' the use of the motor vehicle *as a vehicle*."[15]

In *Saylor*, the plaintiff was injured while working as an inmate on a prison work detail. At the time of the incident, he was sharpening a swing blade on a vise attached to the bumper of a van. As he was doing so, he was bumped by a tractor being operated by another inmate. As a result, he allegedly lost his balance and fell across the swing blade. The van and tractor were owned by Troup County. The county had purchased liability insurance for the van but not the tractor. The question on appeal was whether the plaintiff's injuries arose out of the "ownership, use or maintenance" of the van so as to trigger the liability insurance coverage for the van and a waiver of the county's sovereign immunity. We answered this question in the negative, because "the van was inoperative, parked off the roadway with its engine not engaged"[16] when the plaintiff was injured. "[The plaintiff] was merely using the bumper of the van for placement of the vise, and the van itself was only remotely related to the accident."[17] We, therefore, concluded that the plaintiff's injury did not " 'originate in' " or " 'flow from' the use of the van as a motor vehicle."[18]

*Mitchell v. City of St. Marys*,[19] relied on by Williams, held that where a truck was being used for mosquito eradication, damages resulting from the spraying of insecticide from the truck were injuries arising by reason of the "use" of the truck.[20] *Crider v. Zurich Ins. Co.*,[21]

---

[10] (Emphasis supplied.)

[11] 280 Ga. App. 522 (634 SE2d 480) (2006).

[12] 269 Ga. 503 (501 SE2d 196) (1998).

[13] Id. at 504 (1) (citation omitted).

[14] 225 Ga. App. 489 (484 SE2d 298) (1997).

[15] Id. at 490 (citation and punctuation omitted; emphasis supplied).

[16] Id.

[17] Id.

[18] Id. (citations omitted).

[19] 155 Ga. App. 642 (271 SE2d 895) (1980).

[20] Id. at 645 (2).

[21] Supra.

also relied on by Williams, held that the plaintiff's injuries arose from use of the motor vehicle where he fell or was thrown from the bucket of a backhoe in which he was being transported on a public roadway. *McElmurray v. Augusta-Richmond County*,[22] another case on which Williams relies, held that under *Mitchell* the county waived sovereign immunity by purchasing liability insurance for motor vehicles used to apply sewage sludge as fertilizer allegedly damaging plaintiffs' land.[23]

Clearly, this case is more akin to *Saylor* than to *Mitchell, Crider*, and *McElmurray*. Unquestionably, as in *Saylor* and unlike the other cases, the excavator was not being used as a motor vehicle at the time of Williams's accident. Instead, as recognized by the trial court, "the vehicle was merely present as a static physical mass." As further recognized by the trial court, the excavator was not involved in the incident in which Williams sustained injuries, as "[t]here is no evidence that either [Williams] or the other riders tried to avoid the excavator." Moreover, our review of the agreement between Greenstar and Whitfield County shows that Greenstar was solely responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the project, including the provision of barricades and other precautionary measures. In addition, the excavator was owned, insured, and maintained by Greenstar; it was not under the "management, control, or supervision"[24] of the county; and it was not being operated by any "duly authorized officer, agent, servant, attorney, or employee [of the county] in the performance of his or her official duties."[25] Therefore, it was not a motor vehicle for which the county had provided liability insurance coverage pursuant to OCGA § 33-24-51 (a) or that would waive the county's sovereign immunity under OCGA § 33-24-51 (b).

For these reasons, the trial court did not err in granting the county's motion for summary judgment.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JANUARY 24, 2008.

*Mitchell & Mitchell, Terry L. Miller*, for appellant.

---

[22] 274 Ga. App. 605 (618 SE2d 59) (2005).
[23] Id. at 611-613 (2) (b).
[24] OCGA § 33-24-51 (a).
[25] OCGA § 33-24-51 (b).

*O'Quinn & Cronin, Michael A. O'Quinn, McKenna, Long & Aldridge, J. Kevin Walters, McCamy, Phillips, Tuggle & Fordham, Robert H. Smalley III,* for appellee.