A09A0691. McDUFFIE et al. v. COWETA COUNTY.
(682 SE2d 609)

ADAMS, Judge.

In this wrongful death action the trial court granted summary judgment in favor of Coweta County, finding that the county was

---

protected by sovereign immunity and had not waived that immunity. We hold that the trial court erred and we therefore reverse.

"On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party." (Citations omitted.) *Chamlee v. Henry County Bd. of Ed.*, 239 Ga. App. 183 (521 SE2d 78) (1999).

Viewed in a light most favorable to the appellants, the evidence shows that on August 11, 2003, Terry Rhodes, an inmate incarcerated in the Coweta County Correctional Institute, was assigned by the warden to work as an auto mechanic at the prison's heavy equipment shop. A tire removed from a Ford 6610 prison tractor had been brought into the shop for repair. The inner tube of the tire needed to be replaced, and, therefore, Rhodes and Officer Eldred Devore, Rhodes' immediate supervisor at the shop, went to a local store to purchase a new tube. Upon returning, Rhodes inserted the new tube into the tire and placed the tire back on the rim. Devore went to the restroom as Rhodes was getting a hose to put air in the tire. While Devore was in the restroom, he heard a loud explosion. Devore returned to find Rhodes lying on the ground dead. The tire Rhodes was working on had apparently exploded, causing a substantial impact to Rhodes' chest which resulted in his death. The exact cause of the explosion is unknown and such an accident had not been reported at the prison previously. The equipment at the shop, the tire, and the tractor, were all owned by Coweta County. Rhodes' estate and guardian brought suit against the county alleging that Rhodes' wrongful death occurred during the negligent supervision by Officer Devore.

Sovereign immunity extends to counties under the Georgia Constitution. *Gilbert v. Richardson*, 264 Ga. 744, 746-747 (2) (452 SE2d 476) (1994). Sovereign immunity can be waived but only by "an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). OCGA § 33-24-51 is such a statute. And the version of the statute applicable to this case[1] provides that sovereign immunity was waived if (1) the county purchased the type of insurance defined in the Code section, and (2) the "claim" falls within that type of coverage. OCGA § 33-24-51 (2001); *Chamlee*, 239 Ga. App. at 186 (2).

---

[1] OCGA § 33-24-51 (b) was revised in 2002 but only made effective on January 1, 2005. See Ga. L. 2002, p. 579, §§ 1, 5. The revisions also added Chapter 92 to Title 36. Id. But because the accident in this case occurred in 2003, the previous version of OCGA § 33-24-51 (b) is applicable here. See *Williams v. Whitfield County*, 289 Ga. App. 301, 303 (656 SE2d 584) (2008).

502

1. The undisputed facts show that the county purchased the type of insurance defined in the previous version of OCGA § 33-24-51 (a) and (b).[2] To waive sovereign immunity, the county must have purchased "insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both arising by reason of ownership, maintenance, operation, or use of any motor vehicle."[3] OCGA § 33-24-51 (a). And the policy must provide "liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his or her official duties." OCGA § 33-24-51 (b).

The county had three insurance policies at the time, one of which, the St. Paul Auto Liability Policy, provides the type of coverage required by OCGA § 33-24-51 (a).[4] It covers "bodily injury . . . that results from the ownership, maintenance, use, loading or unloading of a covered auto." The St. Paul Auto Policy also specifically provides coverage for any bodily injury that "is caused by an accident that happens while [the] agreement is in effect." Although the policy specifically excludes bodily injury which is "intentional or expected," it makes no mention of excluding injury caused by negligence. "Accident" "refers to an unexpected happening rather than one occurring through intention or design." *Travelers Indem. Co. v. Hood*, 110 Ga. App. 855, 857 (1) (140 SE2d 68) (1964). " 'Accident' is a more comprehensive term than negligence, [and therefore,] *negligence is included in it*." (Emphasis supplied.) Id. Hence, as the St. Paul Auto Policy covers all "accidents" without

---

[2] The previous version of subsection (b) provided:

(b) Whenever a municipal corporation, a county, or any other political subdivision of this state shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his official duties, its governmental immunity shall be waived to the extent of the amount of insurance so purchased. Neither the municipal corporation, county, or political subdivision of this state nor the insuring company shall plead governmental immunity as a defense; and the municipal corporation, county, or political subdivision of this state or the insuring company may make only those defenses which could be made if the insured were a private person.

OCGA § 33-24-51 (b) (2001).

[3] Sovereign immunity waiver pursuant to OCGA § 33-24-51 (a) and (b) (2001) could "arise[ ] out of *either* ownership, maintenance, operation, or use" of a motor vehicle. (Emphasis supplied.) *Chamlee*, 239 Ga. App. at 187-188 (2).

[4] Plaintiffs concede that the Hartford Insurance Company Commercial Inland Marine Insurance Policy ("Hartford Policy") is inapplicable as it only covers property damage. Additionally, the St. Paul Public Entity General Liability Protection Policy specifically *excludes* coverage for bodily injuries which result from the "ownership, maintenance, use, or operation" of any auto. And although that policy also provides limited excess coverage, the excess coverage only applies to auto bodily injury coverage where that coverage "isn't specifically excluded by the . . . Auto, . . . exclusions in this agreement."

specifically excluding negligence, it incorporates accidents which result from negligence as part of its coverage. Additionally, the policy provides coverage for "autos," which, we conclude, easily falls within the statutory requirement that the insurance cover "motor vehicles."

Finally, because sovereign immunity can only be waived by statute we must determine whether the tractor constitutes a "motor vehicle" for purposes of the statute. We conclude that it does. A vehicle does not have to be designed primarily for use on public roads to constitute a "motor vehicle" under the statute. *Crider v. Zurich Ins. Co.*, 222 Ga. App. 177, 179 (2) (474 SE2d 89) (1996) ("Had the legislature intended to limit sovereign immunity waiver to the operation of motor vehicles designed for and used primarily upon the public streets they could easily have provided . . . but they did not do so."). In *Crider*, we concluded a backhoe, which was used primarily for moving or lifting objects, constituted a "motor vehicle" under the statute. Id. Although the Ford 6610 tractor is primarily used for land maintenance, like the backhoe in *Crider*, it is *capable* of being driven on public roads. It therefore falls within the broad definition of a "motor vehicle" under OCGA § 33-24-51 (a). Compare *Pate v. Turner County*, 162 Ga. App. 463 (291 SE2d 400) (1982) (landfill compactor with metal wheels that required it to be driven on soil or dirt was not a motor vehicle for purposes of waiver of sovereign immunity). We conclude, therefore, that the county has purchased the type of insurance defined in the Code section.

2. Construing the facts in favor of plaintiffs, we conclude that the trial court's reasoning for concluding that the claim is not covered is flawed. As stated above, the policy covers negligence "that results from the ownership, maintenance, use, loading or unloading of a covered auto." The plaintiffs claim the wrongful death resulted from negligent supervision by Officer Devore of Rhodes' actions in maintaining the tractor by attempting to replace a tire.[5] Thus, plaintiffs' claims sound in negligence.

Second, unlike the trial court found, we find that the Ford 6610 tractor is covered by the policy. There are various options for coverage under the St. Paul Auto Policy and the parties dispute whether the Ford 6610 tractor is covered under the option the county has obtained.[6] This disagreement stems from the fact that there is a

---

[5] To support their negligence allegation, plaintiffs point to the fact that Devore left Rhodes unsupervised when the accident occurred and that the auto shop violated specific safety practices, such as failing to own a protective cage to cover the at-issue tire and using a supply chuck that did not have a built-in air pressure gauge.

[6] Although the county maintains that the Ford 6610 tractor is not covered under the St. Paul Auto Policy because it is explicitly covered under the Hartford Policy, no evidence is given

list of vehicles called the "Automobile Schedule" attached to the St. Paul Auto Policy, and the Ford 6610 tractor is not listed among these. The county, however, has selected the "Any auto" coverage option, which means that the policy covers "*any* owned, rented, leased or borrowed auto. It includes hired, nonowned, newly acquired, replacement and temporary substitute autos." In contrast, if the county had selected the "Scheduled autos" coverage, it would have only applied to "any auto . . . described in the Auto Schedule." Thus, by the Policy's explicit terms, the "Automobile Schedule" list is irrelevant to the "Any auto" coverage, and is only applicable to the "Scheduled auto" coverage.

Hence, if the Ford 6610 tractor constitutes an "auto," it would be covered under the St. Paul Auto Policy. The policy defines "auto" as "any land motor vehicle, trailer or semi-trailer designed for travel on public streets or roads." The plaintiffs contend the Ford 6610 tractor clearly fits within this definition because it is specially equipped with rubber tires that allow it to travel on public roads. The county contends the tractor is not a vehicle "designed for travel on public roads" because the Ford 6610 was not "made" for public road driving, and instead used for land maintenance. Because this provision "may be fairly understood in more ways than one" and "is susceptible to two or more constructions," we conclude it is ambiguous. (Punctuation and footnotes omitted.) *Certain Underwriters at Lloyd's of London v. Rucker Constr.*, 285 Ga. App. 844, 848 (2) (648 SE2d 170) (2007). See also *Waters v. Farmers Ins. Co.*, 924 P2d 37 (Wn. App. 1996) (concluding the phrase "designed for travel on public roads" in an insurance policy was ambiguous).

Due to this ambiguity, the provision will be read against the insurance company, and the broader definition, as applying to any vehicle that *can* operate on public roads, will be accepted. See *Crider*, 222 Ga. App. at 180 (2) ("as [the insurance provider] drafted the insurance contract, it will be construed against [them]"). The Ford 6610 tractor *could* be driven on public roads. Indeed, the tractor's Standard Operating Procedures warn that the tractor should not be turned around "in the road" unless an officer is present to assist. Thus, the procedures regarding correct use of the tractor contemplate that it can be driven on the road. As such, we conclude it was "designed for" this purpose.

Finally, the claim arises out of the "ownership, maintenance, use, or loading or unloading" of the Ford 6610 tractor as provided by

---

that such overlapping insurance is prohibited. Additionally, the Hartford Policy anticipates that another insurance policy could provide overlapping coverage. Hence, despite the Hartford Policy coverage, we must still determine if the Ford 6610 tractor is also covered by the St. Paul Auto Policy.

the policy. The injury occurred during maintenance of the tractor. "[M]aintenance covers all acts which come within its ordinary scope and meaning." (Citation and punctuation omitted.) *Hollis v. St. Paul Fire & Marine Ins. Co.*, 203 Ga. App. 252, 254 (416 SE2d 827) (1992). Repairing or replacing a tire on a vehicle falls within the scope of maintenance of that vehicle. See *Morris v. American Liability & Surety Co.*, 322 Pa. 91, 95 (185 A. 201) (1936) (repairing a car wheel by hammering it into place also constituted "maintenance" of the vehicle for purposes of an insurance policy, i.e., it was part of "repairing an essential part of the car").

On motion for reconsideration, the county raises two points already considered and addressed; and we find no basis for altering our opinion. The county also raises two other grounds for the first time on motion for reconsideration; they were not raised in the trial court nor in the county's appellate brief. These arguments concern whether other provisions of the policy preclude coverage. These arguments will not be considered; "absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal." (Footnotes omitted.) *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (573 SE2d 389) (2002).

*Judgment reversed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED JULY 6, 2009 —
RECONSIDERATION DENIED JULY 31, 2009.

*Sherrod & Bernard, John W. Sherrod*, for appellants.
*Thurbert E. Baker, Attorney General, Cruser & Mitchell, Karen E. Woodward, Weinstock & Scavo, Richard V. Merritt*, for appellee.