**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 2, 2020**

# In the Court of Appeals of Georgia

A20A1104. ATLANTIC SPECIALTY INSURANCE COMPANY
v. CITY OF COLLEGE PARK et al.

COOMER, Judge.

Joi Partridge,[1] Floyd Costner,[2] and Douglas Partridge,[3] (hereinafter, "Plaintiffs") filed a wrongful death action against the City of College Park (hereinafter "the City") for the deaths of Dorothy Wright, Cameron Costner, and Layla Partridge (collectively, the "Decedents") after their vehicle was struck by an unknown driver who was being pursued by College Park police. The City's insurer,

---

[1] Individually, and as personal representative of the Estate of Dorothy Wright, as parent and co-personal representative of the Estate of Cameron Costner, and as parent and co-personal representative of Layla Partridge.

[2] Individually, and as parent and co-personal representative of the Estate of Cameron Costner.

[3] Individually, and as parent and co-personal representative of Layla Partridge.

Atlantic Speciality Insurance Company (hereinafter, "Atlantic") intervened in the underlying action for the limited purpose of litigating the limits of Atlantic's insurance policy (the "policy") with the City. Atlantic filed a motion for partial summary judgment asking the trial court to find as a matter of law that the policy limits are $700,000 for Plaintiffs' claims against the City. The trial court denied Atlantic's motion and held that as a matter of law the policy limits available in the underlying wrongful death action are $5 million. Atlantic appeals and argues that the terms of the insurance policy explicitly preserves the City's sovereign immunity for claims for any amount in excess of the statutory limits prescribed by OCGA § 36-92-2.[4] Finding no error, we affirm.

> Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. On appeal, we review a trial court's grant or denial of summary judgment de novo, construing the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.

---

[4] We note that the issue of negligence and causation remain pending in the underlying action and are not subject to this appeal. This appeal shall not be read to endorse any position or outcome relative to the issues that remain pending before the trial court.

2

*Calloway v. City of Warner Robins*, 336 Ga. App. 714, 714 (783 SE2d 175) (2016) (citations and punctuation omitted). So viewed, it is undisputed from the record that on January 31, 2016, an automobile that was being chased by the City's police officers collided with the automobile in which the Decedents were riding, killing the occupants ("the accident"). Plaintiffs filed the underlying wrongful death action against the City alleging, among other things, that the recklessness of the City's police officers was the proximate cause of the accident. At the time of the accident, the City had an insurance policy issued by Atlantic that included business auto and excess liability coverage. The policy's declarations pages provide that the limits of the policy are $1 million under the business auto coverage, and $4 million under the excess liability coverage. Notably, both the business auto and excess liability coverages contained endorsements entitled "Georgia Changes - Protection of Immunity" (collectively, the "Endorsements"). The Endorsements provide, in pertinent part, as follows:

BUSINESS AUTO COVERAGE FORM

. . .

A. Change in Liability Coverage

The following is added to A. Coverage under SECTION II - LIABILITY COVERAGE

We have no duty to pay damages or any "covered pollution cost or expense" on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you.

B. Changes in Conditions

The following is added to SECTION IV - BUSINESS AUTO CONDITIONS

This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

. . .

EXCESS LIABILITY COVERAGE FORM

The following is added to SECTION I - COVERAGE

A. INSURING AGREEMENT - EXCESS LIABILITY

We have no duty to pay "damages" on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you.

The following is added to SECTION V - CONDITIONS

This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

Plaintiffs filed a motion for partial summary judgment on the City's defense of sovereign immunity and seeking a declaration from the trial court that the City waived immunity up to its $5 million policy limits. Atlantic then filed a declaratory action in the United States District Court for the Northern District of Georgia asking the district court to declare that the limits of the policy at issue are $700,000 for the claims made by Plaintiffs in the underlying action. In light of this filing, the trial court deferred ruling on Plaintiffs' motion in the state proceedings pending the outcome of the federal declaratory action. The federal declaratory action was subsequently dismissed without reaching the merits, however, the opinion noted that "[f]inding that a local government and its insurer can contract around the legislative waiver in

OCGA § 36-92-2 would have far reaching implications for all future insurance contracts between local government entities and insurers in Georgia." *Atlantic Specialty Ins. Co. v. City of College Park*, 319 FSupp.3d 1287, 1294 (III) (N.D. Ga. 2018).

Following the dismissal of the federal declaratory action, Plaintiffs filed a renewed motion for partial summary judgment. Atlantic filed a motion to intervene in the state court action for the limited purpose of litigating the limits of Atlantic's insurance policy (the "policy") with the City. The trial court entered an order granting Atlantic's motion to intervene. The City responded to Plaintiffs' renewed motion by reasserting its right to sovereign immunity for any liability in excess of its insurance coverage but taking no position on the amount of coverage available for Plaintiffs' claims. Atlantic filed its own motion for partial summary judgment as to the policy limits, asserting once again that they are $700,000. Following a hearing on the dueling motions, the trial court issued a lengthy order in which it denied Plaintiffs' motion for partial summary judgment for lack of standing, and denied Atlantic's

motion for partial summary judgment, finding as a matter of law the limits of the policy issued to the City are $5,000,000. This appeal followed.[5]

1. Statutory Scheme

Under Georgia law, municipal corporations are protected by sovereign immunity pursuant Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, unless that immunity is waived by the General Assembly. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). Particularly, with regard to municipal corporations, our General Assembly has enacted OCGA § 36-33-1, which reiterates that "it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability from damages." OCGA § 36-33-1 (a). The same statute, however, also provides for a narrow waiver of a municipal

---

[5] Although the trial court's order by its express terms denies summary judgment, and is therefore interlocutory, our review of the order's substance reveals that the order appealed from is more in line with that of a declaratory judgment ruling. See *Edmond v. Continental Ins. Co.*, 249 Ga. App. 338, 340 (1) (a) (548 SE2d 450) (2001) (declaratory judgment appropriate to ascertain extent of insurer's liability). Because the substance of the trial court's order appears to grant judgment as a matter of law, Atlantic was authorized to seek direct appeal of the order. See *Spivey v. Safeway Ins. Co.*, 210 Ga. App. 775, 776 (1) (437 SE2d 641) (1993) (appellant entitled to a direct appeal from what appeared to be an order granting summary judgment in declaratory action).

corporation's sovereign immunity, expressly providing that "[a] municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51 or 36-92-2, or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy."

OCGA § 33-24-51 authorizes the purchase of liability insurance by local governments "for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation[.]" OCGA § 33-24-51 (a). Subsection (b) of the same code section provides in pertinent part that "[t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived as provided in Code Section 36-92-2[,]" and that neither the local government entity nor its insurer "shall plead governmental immunity as a defense;" the local government entity and its insurer "may make only those defenses which could be made if the insured were a private person." OCGA § 33-24-51 (b).

Along the same line, OCGA § 36-92-2 provides that "[t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of

8

a covered motor vehicle is waived up to [certain] limits" as outlined in the statute.

OCGA § 32-92-2 (a).[6] "The waiver provided by this chapter shall be increased to the

extent that . . . [t]he local government entity purchases commercial liability insurance

in an amount in excess of the waiver set forth in this Code section." OCGA § 36-92-2

(d) (3). In *Gates v. Glass*, 291 Ga. 350, 352-353 (729 SE2d 361) (2012), our Supreme

Court gave the following explanation of the statutory scheme with regards to waiver

of sovereign immunity under this code section:

> An examination of OCGA § 36-92-1 et seq., as well as the earlier and
> revised versions of OCGA § 33-24-51 (a) and (b), demonstrates an
> intent on the part of the legislature to create a two-tier scheme within
> which local governments are deemed to have waived sovereign
> immunity with regard to accidents arising from the operation of their
> motor vehicles. The first tier, established under OCGA § 36-92-1 et seq.,
> requires local entities to waive sovereign immunity—up to certain
> prescribed limits—for incidents involving motor vehicles regardless of
> whether they procure automobile liability insurance. The second tier,
> enacted by OCGA § 33-24-51 (b), and as revised in 2002, provides for
> the waiver of sovereign immunity to the extent a local entity purchases
> liability insurance in an amount exceeding the limits prescribed in
> OCGA § 36-92-2. It follows that, where, as here, a local entity purchases

---

[6] For incidents which occur on or after January 1, 2008, such as the one in the present case, an aggregate amount of $700,000 is the limit for bodily injury or death of two or more persons in any one occurrence. OCGA § 36-92-2 (a) (3).

> automobile liability insurance in an amount greater than the prescribed limits set forth for a waiver of sovereign immunity under OCGA § 36-92-1 et seq., the entity waives sovereign immunity to the extent of its insurance coverage as required by OCGA § 33-24-51 (b)[.]

(Footnote omitted). With these guiding principles in mind, we now turn to whether, under the terms of the policy and the statutory scheme explained above, the City's waiver of sovereign immunity is capped at the limitations prescribed under OCGA § 36-92-2 (a) (3) or the extent of its liability policy pursuant to OCGA § 33-24-51 (b).

2. Contractual Exemption From Statutory Scheme

Atlantic contends the trial court erred by holding as a matter of law that the policy's limits are $5 million for Plaintiffs' claims because the policy's endorsements exempt it from the statutory language that increases the waiver to the amount of insurance coverage. Atlantic asserts that this Court's recent decision in *Gatto v. City of Statesboro*, 353 Ga. App. 178, 183-185 (2) (834 SE2d 623) (2019) is dispositive of this case because as Atlantic alleges, the endorsements preserve the City's sovereign immunity beyond the required $700,000 statutory waiver under OCGA § 36-92-2. Moreover, Atlantic contends that to find otherwise would effectively render the endorsements meaningless in direct contravention of Georgia law. We disagree.

10

As an initial matter, we disagree with Atlantic's contention that our decision in *Gatto* is dispostive of this case. In *Gatto*, the parents of the deceased sued the City of Statesboro ("Statesboro") following their son's death after he was beaten up and removed from a bar. 353 Ga. App. at 178-179. The Gattos sued Statesboro for negligence and maintenance of a nuisance under the theory that their son was beaten to death because Statesboro disregarded numerous alcohol violations and other illegal activity occurring at the bar. Id. at 179. Similar to the present case, this Court was asked to determine whether the purchase of liability insurance by Statesboro was a waiver of its sovereign immunity under OCGA § 36-33-1 (a) and in light of the terms of the policy purchased by Statesboro which provided:

> [w]e have no duty to pay damages on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you. This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

*Gatto*, 353 Ga. App. at 183 (2). This Court concluded that because the endorsement language expressly excluded coverage for occurrences when sovereign immunity

11

applies, and sovereign immunity applied to the Gattos' claims as alleged in their lawsuit, there was no legislative waiver of sovereign immunity. Id. at 183-184 (2).

However, our analysis in *Gatto* is not fully applicable here and does not dispose of this case because, unlike the statutory scheme at issue in *Gatto*, the statutory scheme at issue here is decidedly more complex as it deals with several statutes involving insurance coverage for claims arising out of the negligent use of a governmental entity's motor vehicle. The endorsements at issue in the present case reference OCGA § 36-33-1, which specifically carves out OCGA §§ 36-92-2 and 33-24-51 as exceptions to the general rule that the purchase of liability insurance does not waive sovereign immunity. And, as the trial court noted in its order, the General Assembly used the term "shall" in its waivers in both OCGA § 36-92-2 (d) (3) ("the waiver . . . shall be increased to the extent that . . . [t]he local government entity purchases commercial liability insurance in an amount in excess of the waiver set forth in this Code section.") and OCGA § 33-24-51 (b)-(c) ("governmental immunity shall be waived to the extent of the amount of insurance so purchased. . . . The municipal corporation . . . shall be liable for damages in excess of the amount of immunity waived as provided in Code Section 36-92-2 which are sustained only

12

while the insurance is in force and only to the extent of the limits or the coverage of the insurance policy.").

Although Atlantic does not dispute that the City's sovereign immunity is waived up to the limits contained within OCGA § 36-92-2 (a) (3), Atlantic contends that under *Gatto* and OCGA § 33-24-51 (c), the terms of the endorsements preserve the City's sovereign immunity for any amount exceeding the statutory limits of $700,000 because the extension of any coverage is limited to the terms of the policy; in this case the limitations expressed in the endorsements. However, Atlantic's application of this statutory scheme runs counter to the General Assembly's clear legislative intent. *Crider v. Zurich Ins. Co.*, 222 Ga. App. 177, 178-179 (1) (474 SE2d 89) (1996) ("The intent of the legislature in enacting a waiver of sovereign immunity was to allow for the compensation of parties injured by employees and agents of the state through the purchase of liability insurance where recovery is otherwise barred."). "In addition, a portion of a statute cannot be considered in isolation and then interpreted in a way which ignores the overall statutory scheme[.]" *Georgia Emission Testing Co. v. Jackson*, 259 Ga. App. 250, 252 (576 SE2d 642) (2003). Thus, we agree with the trial court that to read the endorsements as suggested by Atlantic would essentially grant insurers and local governmental entities carte

13

blanche to contract around the legislature's clear intent to increase compensation for those who sustain injuries arising out of the use of a government motor vehicle.

It is undisputed that the City was issued a policy for $1 million for automobile liability coverage and $4 million for excess coverage. It is also undisputed that the policy coverage amounts exceed the statutory limits of OCGA § 36-92-2 (a) (3). See *Gates*, 291 Ga. at 353 ("It follows that, where, as here, a local entity purchases automobile liability insurance in an amount greater than the prescribed limits set forth for a waiver of sovereign immunity under OCGA § 36-92-1 et seq., the entity waives sovereign immunity to the extent of its insurance coverage as required by OCGA § 33-24-51 (b)."). It is well established that "[i]n the context of the doctrine of sovereign immunity, statutes providing for a waiver of sovereign immunity are in derogation of the common law and thus are to be strictly construed against a finding of waiver." *Columbus Consolidated Government v. Woody*, 342 Ga. App. 233, 238 (802 SE2d 717) (2017) (citations and punctuation omitted). "Moreover, the doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity be strictly followed." Id. (citation and punctuation omitted).

Additionally, we are unpersuaded by Atlantic's arguments that trial court erred by failing to give effect and meaning to the terms of the policy, because the

14

endorsements cannot be construed to contravene a rule of law. See *Van Dyck v. Van Dyck*, 263 Ga. 161, 163 (2) (429 SE2d 914) (1993) ("Parties to a contract are presumed to have contracted with reference to relevant laws and their effect on the subject matter of the contract, and a contract may not be construed to contravene a rule of law."). OCGA § 33-24-16 provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy."

> The interpretation of an insurance policy is subject to the relevant general rules of contract construction, the cardinal rule being to determine and carry out the intent of the parties. In making the determination of intent, a court is to consider the insurance policy as a whole, and a preferred construction will give effect to each provision, attempt to harmonize the provisions with each other, and not render any of the policy provisions meaningless or mere surplusage. . . . Additionally, exclusions will be strictly construed against the insurer and in favor of coverage. Finally, Georgia law provides that insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy.

*National Casualty Co. v. Georgia School Boards Association-Risk Management Fund*, 304 Ga. 224, 228-229 (818 SE2d 250) (2018) (citations and punctuation omitted). "[I]t is the paramount public policy of this State that courts will not lightly interfere with the freedom of parties to contract on any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." *Bryan v. MBC Partners, L.P.*, 246 Ga. App. 549, 552 (3) (541 SE2d 124) (2000). On this issue, we agree with the trial court that the statutory scheme at issue in this case was intended by the legislature to protect members of the public by waiving the sovereign immunity of local government entities with respect to claims for the negligent use of a motor vehicle and establishing the limits of the amount of the waiver in the event the government entity purchases liability insurance. It is well established that "the State may exercise its police powers to protect the lives, health, morals, comfort, and general welfare of the public. And it is accepted as a commonplace that the Contract Clause does not operate to obliterate the police power of the States." *All Star, Inc. v. Georgia Atlanta Amusements, LLC*, 332 Ga. App. 1, 8 (770 SE2d 22) (2015) (citations and punctuation omitted).

We are further not convinced by the argument that this result renders the terms of the endorsement meaningless because per the terms of the endorsement, Atlantic

is only required to pay damages under the policy if the defense of sovereign immunity is not applicable. See *Fulton County School District. v. Jenkins*, 347 Ga. App. 448, 453 (820 SE2d 75) (2018) (rejecting the argument for implied waiver, we held that "OCGA § 33-24-51 expressly provides for a waiver of sovereign immunity for injuries arising from the operation and use of a motor vehicle by a government actor, as well as for the specific extent of such waiver."). The waiver of sovereign immunity, which occurred by operation of law, is limited to the amount of coverage purchased by the City–this is, $5 million– as prescribed by statute. Accordingly, we find no error.

*Judgment affirmed. Miller, P. J., and Mercier, J., concur*.