72777. CANAL INSURANCE COMPANY v. INTEGON
INDEMNITY CORPORATION.
(350 SE2d 250)

DEEN, Presiding Judge.

On March 12, 1982, Cynthia Taylor Robinson was operating an automobile which was involved in a collision with one driven by Nellie C. Williamson. Williamson and her passengers sustained injuries and subsequently brought two lawsuits against Robinson in the State Court of Cobb County. At the time of the accident, Robinson was driving a Dodge Omni automobile owned by Stag, Inc., a retailer of used motor vehicles, which was insured by Canal Insurance Company. Robinson was not an employee of the corporation, but was driving the vehicle with its permission. Robinson owned a Ford automobile insured by appellee, Integon Indemnity Corporation, and it was the sole automobile listed in the policy. In February of 1984, Integon filed a complaint in the Superior Court of Cobb County seeking a declaratory judgment to declare the company free from liability in the pending state court lawsuits. Canal counterclaimed asking the court to declare Integon to be the primary insurance carrier. Both parties then moved for summary judgment. The court below found that Integon's policy excluded coverage and granted summary judgment in favor of Integon. Canal appeals. *Held*:

The policy in question, Integon's, states that it covers only an owned automobile or a temporary substitute automobile. The policy defines a temporary substitute automobile as "an automobile not owned by the named insured . . . while temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing and repair or because of its breakdown, loss or destruction." Mrs. Robinson's deposition shows that her Ford automobile was being driven by her former husband on the date in question and was not inoperable.

Canal argues that the exclusion of coverage provision in the policy is void as against public policy and cites *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335 (329 SE2d 136) (1985), in support of its argument. In that case, the issue before the court was whether an exclusion in an automobile insurance policy which excluded coverage of the insured "while attempting to avoid apprehension or arrest" is

void as against public policy because Georgia has a compulsory insurance law. (The evidence showed that the insured was trying to outrun a police cruiser at the time of the collision.) The Supreme Court decided that the exclusion was void for public policy reasons because the public interest required insurance coverage for each vehicle operating on the public roads. In *Neese*, supra at 341, three public interests were identified: "(1) as insureds, to limit the insurer's risks and thereby keep automobile insurance premiums as low as possible; (2) as members of the public in general, to improve safety on the highways; and (3) as accident victims, to have access to insurance funds to satisfy their judgments." The opinion in *Neese*, however, made it very clear that the court was addressing only the exclusion in that particular case and commented that there are exclusions from coverage in automobile insurance policies which would not violate public policy.

OCGA § 33-34-4 (a) requires: "No owner of a motor vehicle required to be registered in this state or any other person, other than a self-insurer . . . shall operate or authorize any other person to operate the motor vehicle unless the owner has insurance on the vehicle providing the following minimum coverage: (1) Motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under the motor vehicle safety responsibility laws of this state; (2) Compensation to insured injured persons without regard to fault up to an aggregate minimum limit of $5,000.00 per insured injured person . . ." As pointed out by the trial court, this state's compulsory insurance laws were enacted to insure that accident victims would have adequate recourse for the recovery of damages. *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556, 557 (307 SE2d 499) (1983). In this case, Robinson had the requisite coverage on her Ford automobile, and Stag, Inc., had liability coverage in force on its automobile.

OCGA § 33-34-3 (a) (1) requires "[a]ll policies of motor vehicle liability insurance issued in this state must be in accordance with the requirements of this chapter; and no insurer shall issue a policy of motor vehicle liability insurance in this state that does not contain at least the minimum coverages required under this chapter." Subsection (e) provides: "Each policy of liability insurance issued in this state providing coverage to motor vehicles owned by a person, firm, or corporation engaged in the business of selling at retail new and used motor vehicles shall provide that, when an accident involves the operation of a motor vehicle by a person who is neither the owner of the vehicle involved in the accident nor an employee of the owner and the operator of the motor vehicle is an insured under a complying policy other than the complying policy insuring the motor vehicle involved in the accident, primary coverage as to all coverages provided in the policy under which the operator is an insured shall be afforded by the

policy insuring the said operator and any policy under which the owner is an insured shall afford excess coverages."

Integon argues that OCGA § 33-34-3 (e) is not applicable to this case under the holding in *Barfield v. Allstate Ins. Co.*, 172 Ga. App. 882, 883 (324 SE2d 731) (1984), wherein this court held that OCGA § 33-34-3 (e) did not express a public policy requiring Allstate "to afford primary coverage to [plaintiff's] vehicle." An examination of *Barfield* reveals that Allstate brought a declaratory judgment action seeking an interpretation of the code section and the plaintiff alleged that a policy exclusion which provided that the insurance company was not liable for "injury or destruction of property a person insured owns, is in charge of or rents . . ." was enforceable and not void as against public policy. The defendants argue that this code section expresses a public policy that the plaintiff (Allstate) shall afford primary coverage for the damage to defendant's automobile. In holding that the code section expresses no such policy, the court found that Allstate issued the liability coverage as required under OCGA § 33-34-4, but could find no law requiring an automobile insurer to provide collision coverage although such coverage was required to be offered on an optional basis. An examination of the relevant statutory and case law revealed no public policy requirement of such coverage.

In the instant case, Integon issued the statutorily required liability coverage to Ms. Robinson. When OCGA § 33-34-3 (e) is read together with OCGA § 33-34-4 (a) (1) it is obvious that all motor vehicle policies must provide that they have primary liability in a situation such as that set forth above. The *Barfield* case is distinguishable because it involved optional collision coverage which the insured elected not to carry and did not involve mandatory liability coverage as in the case at bar. *State Farm &c. Ins. Co. v. Lietz*, 122 Ga. App. 596 (178 SE2d 218) (1970), and *Hemphill v. Home Ins. Co.*, 121 Ga. App. 323 (174 SE2d 251) (1970), are not applicable as they were decided prior to the enactment of the compulsory insurance law in 1974.

*Judgment reversed. Banke, C. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, Pope, and Benham, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

Upon motion for rehearing by Integon, the driver's insurer, I would have to agree with the trial court's well-reasoned order, having reconsidered the arguments of the parties and the applicable law.

The policy in question is Integon's, and the question is whether the policy or the law of Georgia imposed liability on Integon in connection with the collision of its insured, Ms. Robinson.

The terms of the policy which Robinson bought covered only her own automobile or a temporary substitute which would be in use

while hers was inoperable. While this insurance was in effect, Robinson went to Stag, Inc., a retail used motor vehicle dealer. She was given permission to drive one of the used cars it had for sale, and while so engaged, a collision occurred for which damages are sought against her.

Stag, Inc.'s policy with Canal Insurance Company covered its automobiles. By operation of OCGA § 33-34-3 (e) it was required to provide excess coverage for collisions when someone other than its owners or an employee was operating one of its vehicles and that person had insurance which provided coverage. This subsection (e) also required that the operator's own covering policy be the primary one, "as to all coverages provided in the policy." Thus, what this subsection does is establish by law which shall be the primary and which shall be the excess coverage, thereby avoiding any dispute and filling in the gap which might otherwise exist if both covering policies sought to be excess rather than primary.

I do not read subsection (e), either alone or together with any other section, as imposing on the operator's policy a coverage which it did not undertake by its terms. Robinson's policy covering her own car did not cover other owners' vehicles which she might happen to be driving, other than a substitute being used when her own vehicle was inoperable. Everyone agrees that she was not driving such a substitute in this collision. Thus the question of which was primary and which was excess does not even arise, and OCGA § 33-34-3 (e) does not apply to Integon's policy in this case.

OCGA § 33-34-3 (a) (1) mandates that all motor vehicle liability policies issued in this state contain at least the minimum coverages which chapter 34 designates. Chapter 34 is the Georgia Motor Vehicle Accident Reparations Act. OCGA § 33-34-1. Robinson's policy did that and so was in compliance with the law, which does not require it to cover personal or property damages when she is driving other owners' vehicles. Such coverage would increase the risk and no doubt the premium.

The vehicle involved here was Stag, Inc.'s, not Robinson's. Thus the minimum coverages set out in OCGA § 33-34-4 relate to the obligation of Stag, Inc., not Robinson. OCGA § 33-34-4 (a), which the majority in part relies on to conclude that Robinson's insurer Integon is liable, states that "No owner of a motor vehicle . . . shall . . . authorize any other person to operate the motor vehicle unless the owner has (the minimum coverage) insurance on the vehicle . . ." Thus the minimum coverages set out in section 4 relate to the obligation of Stag, Inc., not Robinson.

*Barfield v. Allstate Ins. Co.*, 172 Ga. App. 882 (324 SE2d 731) (1984) supports this analysis. The court held that the operator's insurer was required by OCGA § 33-34-3 (e) the primary insurer *"only*

'as to all coverages provided in the policy under which the operator is an insured.' " Id. at 883. (Emphasis supplied.) Since the operator's policy provided no coverage for property damage to the loaned vehicle, her insurer had no duty to provide the primary coverage mentioned in that statute. One must initially look at what the operator's policy provides, as demonstrated by the court's approach to the property damage issue in that case as well as by its approach to the liability issue. Where the policy provides no such coverage in the first place, then the question of whether it should be primary or excess does not come up.

We state in this case that "Integon issued the statutorily required liability coverage to Robinson." That being so, we cannot rewrite its policy to embrace coverage which it did not undertake, just so that we can then apply OCGA § 33-34-3 (e) to give it primary rather than excess responsibility for that coverage. OCGA § 33-24-16; *Pilot Life Ins. Co. v. Morgan*, 94 Ga. App. 394, 399 (94 SE2d 765) (1956).

DECIDED SEPTEMBER 16, 1986 —
REHEARINGS DENIED OCTOBER 27, 1986

*Harry W. Bassler*, for appellant.
*Jack O. Morse, C. Michael Evert, Jr., James B. Gordon, E. Graydon Shuford*, for appellee.
*William P. Tinkler, Jr.*, amicus curiae.