## 44073. INTEGON INDEMNITY CORPORATION v. CANAL INSURANCE COMPANY.

(353 SE2d 186)

GREGORY, Justice.

The trial court granted summary judgment to Integon Indemnity Corporation (Integon) in a declaratory judgment action involving coverage of one of the company's insureds. The Court of Appeals reversed. *Canal Ins. Co. v. Integon Indem. Corp.*, 180 Ga. App. 670 (350 SE2d 250) (1986). We reverse the Court of Appeals.

On March 12, 1982, Stag, Inc., a used car dealer, gave Cynthia Robinson permission to drive a Dodge Omni off its sales lot. The Omni collided with a vehicle driven by Nellie Williamson. Williamson and her passengers were injured and filed lawsuits against Robinson.

Stag's Omni was insured by Canal Insurance Company (Canal). Robinson owned a Ford, which was insured by Integon. Robinson's policy with Integon limited coverage to vehicles owned by Robinson or temporary substitutes used while Robinson's vehicle was being repaired. At the time of Robinson's collision, her husband was using their Ford.

In February 1984, Integon filed a declaratory judgment action seeking a declaration of no coverage under its policy in the pending suits. Canal counterclaimed asking that Integon be declared the primary insurance carrier pursuant to OCGA § 33-34-3 (e). The trial court granted Integon's motion for summary judgment.

The Court of Appeals reversed, and we granted certiorari to determine whether the limited coverage provided by the policy issued to Robinson by Integon meets minimum coverages required by the Georgia Code.

Both Integon and Canal agree that if Integon's policy provides coverage for Robinson's involvement in the accident in question, then Integon is the primary liability carrier pursuant to OCGA § 33-34-3 (e). But Integon argues that its policy does not cover Robinson as an operator of a vehicle neither owned by Robinson nor a temporary substitute.

Canal argues that the provisions in Integon's policy limiting coverage to vehicles owned by her or temporary substitutes is void as a matter of public policy. Canal contends that such provisions thwart the policy behind compulsory liability insurance laws that accident victims will have access to insurance funds to satisfy their judgments. Canal cites for support *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335 (329 SE2d 136) (1985), in which this court struck down a provision in an automobile insurance policy excluding coverage of the insured "while attempting to avoid apprehension or arrest."

We have held that the advent of compulsory motor vehicle liability insurance in Georgia established a public policy of providing that

innocent persons who are injured should have an adequate recourse for the recovery of their damages. See *Cotton States Mut. Ins. Co. v. Neese,* supra at 338; *Anderson v. Southeastern Fidelity Ins. Co.,* 251 Ga. 556 (307 SE2d 499) (1983).

The real dispute in the instant case involves the legislature's method for implementing this public policy. Canal argues that to assure all accident victims have access to adequate resources to satisfy their judgments, coverages in automobile liability insurance policies should as a matter of law apply to the insureds no matter who owns the vehicle being driven by the insured. Integon, on the other hand, argues the state's compulsory insurance laws require only that the owner of each vehicle insure the vehicle to the statutory minimum coverages for insured motor vehicles listed in the policy. Any coverage of the insured while driving a vehicle owned by another is a matter of negotiation between the insurer and the insured, Integon contends.

Expressions of the legislature through statutes are conclusive on the question of public policy; and courts cannot declare agreements or acts authorized by statute to be contrary to public policy. *Greenwood Cemetery v. Travelers &c. Co.,* 238 Ga. 313, 316-17 (232 SE2d 910) (1977). We thus begin our analysis by looking at the language in the Georgia motor vehicle accident reparations laws and the motor vehicle safety responsibility laws.

The legislature in OCGA § 33-34-4 (a) provided what minimum coverages are required: "(a) No owner of a motor vehicle required to be registered in this state or any other person, other than a self insurer as defined in this chapter, shall operate or authorize any other person to operate the motor vehicle unless the owner has insurance on the vehicle providing the following minimum coverage: (1) Motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under the motor vehicle safety responsibility laws of the state; . . ."

Reduced to its basic elements, OCGA § 33-34-4 (a) (1) provides: "No owner . . . or any other person . . . shall operate . . . the motor vehicle *unless the owner has insurance* . . . equivalent to that required . . . under the motor vehicle safety responsibility laws of the state." (Emphasis supplied.)

Statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation. See *Earth Management v. Heard County,* 248 Ga. 442, 444 (283 SE2d 455) (1981). A plain reading of OCGA § 33-34-4 (a) demonstrates the legislature charges the owner with the responsibility of insuring vehicles. All others are simply precluded from operating the vehicle when the owner has no insurance. In theory, each car has an owner and thus each car involved in an accident has the minimum

coverages required by the Georgia Code. The legislature could have designed the scheme to protect accident victims by requiring that no owner or other person operate a vehicle unless the owner or *other person* has insurance on the vehicle. Instead, the onus to procure insurance is put on the owner and others are prohibited from operating the vehicle until that is done.

Furthermore, the legislature apparently contemplated insurance policies which might either limit coverage to vehicles listed in the insured's policies or extend to the insured no matter whose vehicle was being driven. For instance, in OCGA § 40-9-34 (2), the code provides that the security and suspension requirements for bodily injury and property damage liability listed in the code need not apply: "To the operator, if he is not the owner of the vehicle involved in the accident but there was in effect at the time of the accident an automobile liability policy *with respect to his driving of vehicles not owned by him* which provided him with liability coverage if the operator of the motor vehicle is involved in such accident; . . . ." (Emphasis supplied.) This language envisions policies which afford the extended coverage and polices which do not.

We find that Integon's policy met the minimum coverages required by the Georgia Code. Since it did not provide coverage for the collision in question, it cannot be held to be primary coverage pursuant to OCGA § 33-34-3 (e). The trial court did not err in granting Integon's motion for summary judgment.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 24, 1987.

*Fortson & White, William A. Pannell, C. Michael Evert, Jr.,* for appellant.

*Fain, Major & Wiley, Charles A. Wiley, Jr., Thomas R. Brennan,* amicus curiae.

*Scroggins, Brizendine & Bassler, Harry W. Bassler,* for appellee.

*Smith, Gambrell & Russell, John A. Blackmon, Edward H. Wasmuth, Jr.,* amicus curiae.