**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 30, 2017**

# In the Court of Appeals of Georgia

A17A0044. COLUMBUS CONSOLIDATED GOVERNMENT v.
    FRANKLIN WOODY

BETHEL, Judge.

The Columbus Consolidated Government (Columbus) appeals from the denial of its motion for judgment on the pleadings. Columbus asserts that sovereign immunity bars the claims of Franklin Woody because the injuries he sustained while welding a garbage truck belonging to Columbus as part of a prison work detail did not arise from the negligent use of a motor vehicle.

We agree and reverse because the statute providing wavier of sovereign immunity is limited in scope and does not allow a plaintiff to bring suit to recover for injuries arising solely out of maintenance of a covered motor vehicle.

"On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings, and we construe the complaint in a light most favorable to [Woody], drawing all reasonable inferences in his favor." *Hewell v. Walton Cty*, 292 Ga. App. 510, 510-11 (664 SE2d 875) (2008) (citation omitted). So viewed, the pleadings allege that on October 12, 2011, Franklin Woody was working a prisoner work detail. Woody was assigned the task of welding spots on the body of a garbage truck belonging to Columbus. Sparks from the welding ignited Woody's prison jumpsuit and he sustained injuries. Woody brought a personal injury action against Columbus.[1] Columbus filed a motion for judgment on the pleadings, arguing that Woody's claims were barred by the doctrine of sovereign immunity. The trial court denied Columbus' motion, and this appeal followed.

"Under Georgia law, sovereign immunity is an immunity from suit, rather than a mere defense to liability," and therefore, whether a governmental defendant has waived its sovereign immunity is a threshold issue. *Bd. of Regents, of Univ. Sys. of Ga. v. Canas*, 295 Ga. App. 505, 507 (1) (672 SE2d 471) (2009) *overruled on other grounds by Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016). Sovereign

---

[1] The Georgia Department of Corrections was originally named as a co-defendant in this suit; however, it was later dismissed without prejudice by order of the trial court.

immunity extends to the county and can only be waived by a legislative act of the General Assembly specifically providing for the wavier and its extent. *Hewell*, 292 Ga. App. at 512 (citation omitted); *see also* Ga. Const. Art. I, Sec. II, Par. IX. Accordingly, "[a] waiver of sovereign immunity must be established by the party seeking to benefit from that waiver." *McCobb v. Clayton Cty.*, 309 Ga. App. 217, 218 (1) (a) (710 SE2d 207) (2011) (citation and punctuation omitted).

The sole issue before this Court is whether OCGA §§ 33-24-51 (b) and 36-92-2 waive sovereign immunity for injuries arising from the maintenance work performed by Woody on the garbage truck. In response to Columbus's motion for judgment on the pleadings, Woody argued, and the trial court found, that OCGA §§ 33-24-51 (b) and 36-92-2 waive Columbus's sovereign immunity.[2] However, an analysis of the plain language of these statutes as illuminated by their history shows that that determination was incorrect.

Prior to 2005, subsection (a) of OCGA § 33-24-51 provided that political subdivisions of the state, including municipalities, were authorized to procure liability

---

[2] We note that Woody, while working as a prisoner, clearly stands in the place of an involuntary servant under the provisions of OCGA 33-24-51(b). See *Chamlee v. Henry Cty. Bd. of Ed.*, 239 Ga. App. 183, 189 (521 SE2d 78) (1999) (Eldridge, J., concurring specially).

3

and property damage insurance "arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the political subdivision. . . ." Ga. L. 1960, p. 289, § 1; Ga. L. 1985, p. 1054, § 1. Subsection (b) then provided that when a political subdivision purchased "the insurance authorized by subsection (a) . . . its governmental immunity shall be waived to the extent of the amount of insurance so purchased." *Id*. Thus, in *Chamlee v. Henry County Bd. of Educ.*, 239 Ga. App. 183, 188 (2) (521 SE2d 78) (1999), this Court held that subsection (b) "provides for waiver of sovereign immunity to the extent of the amount of liability insurance purchased . . . that arises out of either ownership, maintenance, operation, or use of a motor vehicle."[3]

Effective in 2005, however, the legislature amended the statute to change fundamentally how the waiver of sovereign immunity worked, and it did so largely by adding a new first sentence to subsection (b) and by adding several related new code sections, most importantly, OCGA § 36-92-2. As amended, subsections (a) and (b) of OCGA § 33-24-51, provide as follows:

---

[3] In so concluding, this Court in *Chamlee* noted that although some Supreme Court of Georgia cases had stated that under OCGA § 33-24-51, the government entity waives immunity arising from the *use* of a motor vehicle, in none of those cases did the Supreme Court actually address any distinction between the categories of ownership, operation, maintenance, or use. *Chamlee*, 239 Ga. App. at 186-187.

4

(a) A municipal corporation, a county, or any other political subdivision of this state is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both *arising by reason of ownership, maintenance, operation, or use of any motor vehicle* by the municipal corporation, county, or any other political subdivision of this state under its management, control, or supervision, whether in a governmental undertaking or not, and to pay premiums for the insurance coverage.

(b) *The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived as provided in Code Section 36-92-2.* Whenever a municipal corporation, a county, or any other political subdivision of this state shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his or her official duties in an amount greater than the amount of immunity waived as in Code Section 36-92-2, its governmental immunity shall be waived to the extent of the amount of insurance so purchased. . . .

OCGA § 33-24-51 (emphasis supplied). Correspondingly, new Code section 36-92-2 established the degree to which immunity was waived under the new first sentence

5

of OCGA § 33-24-51 (b) for "negligent use of a covered motor vehicle." OCGA § 36-92-2 (a). And it also provides that

> [t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived only to the extent and in the manner provided in this chapter and only with respect to actions brought in the courts of this state.

OCGA § 36-92-2 (b). Thus, as the Georgia Supreme Court has summarized, OCGA § 33-24-51, as amended, "create[s] a two-tier scheme within which local governments are deemed to have waived sovereign immunity":

> The first tier . . . requires local entities to waive sovereign immunity—up to certain prescribed limits—for incidents involving motor vehicles *regardless of whether they procure automobile liability insurance*. The second tier, enacted by OCGA § 33-24-51 (b), and as revised [effective in 2005], provides for the waiver of sovereign immunity to the extent a local entity purchases liability insurance in an amount exceeding the limits prescribed in OCGA § 36-92-2.

*Gates v. Glass*, 291 Ga. 350, 352-353 (729 SE2d 361) (2012) (emphasis supplied). The first sentence in OCGA § 33-24-51 (b) and OCGA § 36-92-2 indicate that the first-tier waiver of immunity does not apply to "ownership, maintenance, [or] operation" of a motor vehicle, the terms found in subsection (a) of OCGA § 33-24-51.

6

Consequently, cases interpreting the statute, as it existed prior to 2005, are not relevant to the question before the Court in this case.[4] This case thus presents a question of first impression in Georgia with respect to the amended language of OCGA § 33-24-51(b) and the language of OCGA § 36-92-2.

In construing this statute, we start and if at all possible end, with the plain language of the statute.

> Under our well-established rules of statutory construction . . . we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. We look to the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it.

---

[4] *See, e.g., Williams v. Whitfield Cty.*, 289 Ga. App. 301, 303 (656 SE2d 584) (2008); *Chamlee*, 239 Ga. App. at 188; *see also Blumsack v. Bartow Cty.*, 223 Ga. App. 392, 393-396 (1) (477 SE2d 642) (1996). The plain language of OCGA § 33-24-51 (b) in effect when the events giving rise to *Chamlee* and *Williams* occurred provided for waiver simply because the government had purchased insurance providing liability coverage. However, as we discuss more fully in the body of this opinion, the statute authorizing these holdings has been narrowed by the General Assembly, making the prior interpretation of OCGA § 33-24-51 (b) we articulated in *Chamlee* and *Williams* no longer applicable and contrary to the explicit text of the currrent statute.

7

*West v. State*, 300 Ga. 39, 42 (793 SE2d 57) (2016) (citations and punctuation omitted).

"Statutes should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation." *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987); OCGA § 1-3-1 (b). "It is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning." *Gilbert v. Richardson*, 264 Ga. 744, 747-48 (452 SE2d 476) (1994) (citation and punctuation omitted). In other words, we always must presume that the General Assembly "means what its says and says what it means." *Northeast Atlanta Bonding Co. v. State of Ga.*, 308 Ga. App. 573, 577 (1) (707 SE2d 921) (2011). Thus when the General Assembly adds language to the existing code section, it follows that the new language has meaning, such that the language clarifies, limits, expands, or changes the meaning of the revised code section.

In the context of the doctrine of sovereign immunity, "statutes . . . providing for a waiver of sovereign immunity are in derogation of the common law and thus are

8

to be strictly construed against a finding of waiver." *Gish v. Thomas*, 302 Ga. App. 854, 860 (691 SE2d 900) (2010); *see also Smith v. Chatham County*, 264 Ga. App. 566, 568-69 (1) (591 SE2d 388) (2003)."Moreover, the doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives immunity be strictly followed." *Bd. of Regents of Univ. Sys. of Ga. v. Brooks*, 324 Ga. App. 15, 17 (749 SE2d 23) (2013) (citation and punctuation omitted).

The plain language of the amended statute shows that the legislature clearly chose not to use all four terms found in subsection (a) of OCGA § 33-24-51 when it added the new first sentence to subsection (b) of OCGA § 33-24-51, which it easily could have. Instead it chose to limit the scope of the first-tier immunity waiver to "a loss arising out of claims for the negligent use of a covered motor vehicle." OCGA § 33-24-51 (b). Similarly, the second sentence of subsection (b), which was also amended in 2005 to incorporate the new two-tier structure, shows that the second tier of waiver still refers to "the insurance authorized by subsection (a)" whereas the first sentence of subsection (b) refers only to the "negligent use." Thus, in two separate ways, when amending OCGA § 33-24-51 to create the new first-tier of waiver, the legislature chose not to refer to all four categories listed in subsection (a). In addition,

9

the legislature twice used the identical "negligent use" language: first in OCGA § 36-92-2 and again in OCGA § 33-24-51 (b).

While we recognize that determining whether an event arises from the "use" of a motor vehicle can depend on the particular circumstances, and a bright-line definition may be elusive,[5] "the question to be answered is whether the injury originated from, had its origin in, grew out of, or flowed from the use of the motor vehicle as a vehicle." *Saylor v. Troup Cty.*, 225 Ga. App. 489, 490 (484 SE2d 298) (1997) (citation and punctuation omitted). In this case, it is undisputed from the record that at the time of the welding incident, the garbage truck was immobile and undergoing maintenance. Based on the plain, unambiguous language of the waiver provisions of OCGA §§ 33-24-51 (b) and 36-92-2 (a), we find no basis for construing the term "use" to encompass the maintenance or repair of the garbage truck. If the legislature intended that the term "use" should be construed to include the "ownership, maintenance, and operation" of a covered vehicle when determining the scope of a first-tier waiver of sovereign immunity, it would have included those terms in the language providing for the second-tier waiver just as it had done in the provision of OCGA § 33-24-51 (a). Instead we read subsection (b) as providing a

---

[5] *Gish*, 302 Ga. App. at 861 (citation and punctuation omitted).

10

narrower waiver than that contemplated by subsection (a). With that in mind, we must conclude that Columbus' vehicle was not being "used" as a garbage truck when Woody sustained his injuries.

Accordingly, we hold that waiver of sovereign immunity as contemplated by OCGA §§ 33-24-51 (b) and 36-92-2 is limited to those claims arising out of the negligent use of a covered motor vehicle as a vehicle. Thus for the foregoing reasons, we must conclude that the sovereign immunity of Columbus is not waived with respect to Woody's claims as alleged. We therefore reverse.

*Judgment reversed. Branch, J., concurs. McFadden, P. J., concurs specially.*

A17A0044. COLUMBUS CONSOLIDATED GOVERNMENT v.
WOODY.

MCFADDEN, Presiding Judge, concurring fully and specially.

I concur fully in the majority opinion. Because the pleadings do not indicate the existence of a policy, the only waiver of sovereign immunity that could possibly apply would be the automatic waiver described by the majority and our Supreme Court as a "first-tier" waiver. See *Gates v. Glass*, 291 Ga. 350, 352-353 (729 SE2d 361) (2012). The majority holds, and I reluctantly agree, that a first-tier waiver applies only to losses "arising out of claims for the *negligent use* of a covered motor vehicle [up to the limits] provided in Code Section 36-92-2." OCGA § 33-24-51 (b) (emphasis supplied). This, the majority holds and I reluctantly agree, is in contrast to the broader scope of a second-tier waiver, which is effected by the purchase of insurance. A second-tier waiver extends to losses "arising by reason of ownership, maintenance, operation, or use of any motor vehicle." See OCGA § 33-24-51 (a), (b).

Woody's claim arose out of the maintenance of a motor vehicle — not the use of a motor vehicle. So his claim is not within the scope of the automatic "first-tier"

1

waiver. And since he did not allege the existence of an insurance policy which would have effected a second-tier waiver, Columbus was entitled to judgment on the pleadings.

I write separately to explain my reluctance. I concur reluctantly for two reasons. First, it is by no means clear that the legislature intended that the scope of a first-tier waiver differ from the scope of a second-tier waiver. Second, as detailed below, when a government entity purchases insurance in an amount equal to or less than the amount of the automatic, first-tier waiver, our analysis would lead to a result the legislature is unlikely to have intended.

As to my first concern, a close reading of OCGA § 36-92-2 suggests that, contrary to our holding, the scope of first- and second-tier waivers is the same. Reading together subsections (a), (b), and (d) (3) of that Code section leads one to the conclusion that the automatic, first-tier waiver and the second-tier waiver effected by the "purchase[ of] commercial liability insurance in an amount in excess of the waiver set forth in th[at] Code section," OCGA § 36-92-2 (d) (3), are both of immunity from liability "for a loss arising out of claims for the negligent use of a covered motor vehicle[.]" OCGA § 36-92-2 (a), (b). On the other hand I agree that a comparison of subsections (a) and (b) of OCGA § 33-24-51 at least suggests different scopes of

2

waiver for the two different tiers. My doubts about which interpretation we must adopt are dispelled by the rule that "statutes that provide for a waiver of sovereign immunity . . . are in derogation of the common law, [and so] are to be strictly construed *against* a finding of waiver." *Raw Properties v. Lawson*, 335 Ga. App. 802, 806 (1) (783 SE2d 161) (2016) (citations and punctuation omitted; emphasis in original). But I remain in doubt whether that is the interpretation intended by the General Assembly.

My second concern is that our analysis appears to lead to an anomaly that the General Assembly surely did not intend. That anomaly would arise when a government entity purchases insurance coverage for an amount equal to or less than the amount of the tier-one waiver, the automatic waiver of sovereign immunity established by OCGA § 36-92-2 (a).

OCGA § 33-24-51 (a) authorizes certain government entities to purchase insurance coverage for certain claims "arising by reason of ownership, maintenance, operation, *or* use of any motor vehicle[.]" OCGA § 33-24-51 (a) (emphasis supplied). As mentioned above, subsection (b) of that Code section sets forth two express waivers of sovereign immunity: the automatic "first-tier" waiver and the "second-tier" waiver, which applies when the government entity has purchased insurance as

3

authorized by subsection (a) "in an amount *greater* than the amount of immunity waived as in Code Section 36-92-2[.]" OCGA § 33-24-51 (b) (emphasis supplied). Our Supreme Court has interpreted this second-tier to "provide[ ] for the waiver of sovereign immunity to the extent a local [government] entity purchases liability insurance in an amount exceeding the limits prescribed in OCGA § 36-92-2." *Gates*, supra, 291 Ga. at 352-353.

My concern with the application of this Code section, as it has been interpreted in *Gates*, supra, is the circumstance where a government entity purchases insurance to cover ownership, maintenance, or operation of a vehicle, as authorized by subsection (a), but in an amount equal to or less than the amount of the first-tier waiver of sovereign immunity, the automatic waiver established by OCGA § 36-92-2 (a). If the claim did not arise from negligent use, the anomaly would arise. Sovereign immunity would *not* be waived. First-tier immunity would not apply for the reasons set forth in the majority opinion. Second-tier immunity would not apply because the amount of insurance purchased by the government entity did not exceed the limits prescribed in OCGA § 36-92-2 (given the construction of OCGA § 33-24-51 (b) in *Gates*, supra).

4

Compare, for example, the following scenarios. "Plaintiff A" asserts a claim against "County A" for damages of $400,000 arising from the negligent maintenance of a county vehicle. Pursuant to OCGA § 33-24-51 (a), "County A" has purchased insurance coverage for claims arising from ownership, maintenance, operation, or use of a motor vehicle. But the limit of that coverage is $500,000, which does not exceed the limits prescribed in OCGA § 36-92-2 (a). So although "County A" has insurance to cover the $400,000 negligent maintenance claim brought by "Plaintiff A," "County A" has not waived its sovereign immunity as to that claim. "Plaintiff A" cannot proceed with his claim.

"Plaintiff B" also asserts a claim for damages of $400,000 arising from the negligent maintenance of a county vehicle, but his claim is against "County B." And, pursuant to OCGA § 33-24-51 (a), "County B" has purchased insurance coverage for claims arising from ownership, maintenance, operation, or use of a motor vehicle. But unlike the insurance purchased by "County A," the insurance purchased by "County B" has a limit of $500,001 and therefore exceeds the prescribed limits of OCGA § 36-92-2 (a) (3) by one dollar. "County B" has waived its sovereign immunity to the negligent maintenance claim under the "second-tier" waiver of OCGA § 33-24-51 (b)

5

for claims up to $500,001. So "Plaintiff B" can proceed against "County B" on his $400,000 claim for negligent maintenance.

I see no reason for this disparate treatment of "Plaintiff A" and "Plaintiff B." Yet the language of OCGA § 33-24-51, as interpreted by our Supreme Court in *Gates*, supra, seems to require it.

There is an alternative interpretation of OCGA § 33-24-51 that would avoid this result. As quoted above, subsection (b) of that Code section provides for a waiver of sovereign immunity where the governmental entity has purchased insurance pursuant to OCGA § 33-24-51 (a) "in an amount greater than the amount of *immunity* waived as in OCGA § 36-92-2[.]" OCGA § 33-24-51 (b) (emphasis supplied). No *immunity* is waived for a claim of negligent maintenance (or ownership, or operation) under OCGA § 36-92-2 because that Code section concerns the waiver of immunity only of claims for negligent use. OCGA § 36-92-2 (a). Because no immunity is waived for such claims under OCGA § 36-92-2, insuring against them for any amount greater than zero constitutes insuring them "in an amount greater than the amount of immunity waived" in that statute. And because OCGA § 36-92-2 provides no waiver of sovereign immunity for claims other than negligent use, a government entity's sovereign immunity to a claim for negligent maintenance (or ownership, or operation)

6

arguably is waived under the plain language of OCGA § 33-24-51 (b) to the extent that the entity has purchased insurance to cover such a claim — whether or not the amount of that insurance exceeds the dollar amounts prescribed in OCGA § 36-92-2.

But that is not what the *Gates* decision appears to hold. And statutes relating to sovereign immunity "are to be strictly construed *against* a finding of waiver." *Raw Properties*, supra, 335 Ga. App. at 806 (1) (citation and punctuation omitted; emphasis in original).

I respectfully suggest that the General Assembly reconsider these provisions.