NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 11, 2023

S22G1152.  McBRAYER et al. v. SCARBROUGH.

ELLINGTON, Justice.

In *McBrayer v. Scarbrough*, 364 Ga. App. 112, 118 (874 SE2d 146) (2022), the Court of Appeals affirmed an order of the Superior Court of Tift County granting a judgment on the pleadings in favor of the Sheriff of Tift County, Gene Scarbrough, in this action brought by Sherrie McBrayer for the wrongful death of her husband, James Aaron McBrayer ("the decedent"). The Court of Appeals held that Scarbrough was immune from suit because McBrayer's complaint did not show that the decedent's death, which occurred while he was restrained in the back seat of a patrol car, arose from the sheriff's deputies' "use" of the patrol car "as a vehicle," which, under Court of Appeals case law construing OCGA §§ 33-24-51 (b) and 36-92-2, is a prerequisite for a waiver of sovereign immunity for injuries arising

from the "negligent use of a covered motor vehicle." *McBrayer*, 364 Ga. App. at 118 (1). In so holding, the Court of Appeals noted that McBrayer's complaint did not allege "that the car was running; that any deputy was seated in the car; that any deputy was poised to start the car or transport the decedent to any location;" or that the deputies were otherwise "actively" using the patrol car "as a vehicle." Id. at 115 (1). McBrayer thereafter timely petitioned this Court for a writ of certiorari to the Court of Appeals.[1] We granted her petition and posed these questions to the parties:

> (1) Does "use" of a motor vehicle as provided in OCGA §§ 33-24-51 (b) and 36-92-2 require the motor vehicle to be "actively in use" "as a vehicle" when the injury arose? . . . .
> (2) Does loading a person into or restraining a person in a patrol car constitute the "use" of a motor vehicle as to which sovereign immunity is waived under OCGA §§ 33-24-51 (b) and 36-92-2?

As explained below, we hold that the Court of Appeals erred in limiting the meaning of the word "use" in the phrase "use of a covered motor vehicle" by reading into OCGA §§ 33-24-51 (b) and 36-

---

[1] We granted a writ of certiorari on March 7, 2023. The case was docketed to the April 2023 term and orally argued on June 20, 2023.

92-2 the words "actively" and "as a vehicle." Therefore, we reverse the judgment of the Court of Appeals and remand the case to that court.

*1. Standard of Review and Pertinent Factual and Procedural Background*

"Our review of a trial court's decision on a motion for judgment on the pleadings is de novo." *Polo Golf & Country Club Homeowners Assn., Inc. v. Cunard*, 306 Ga. 788, 791 (2) (833 SE2d 505) (2019). And, in reviewing such motions, "all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false." (Citation and punctuation omitted.) Id. at 791-792 (2). See also *Reliance Equities, LLC v. Lanier 5*, LLC, 299 Ga. 891, 893 (1) (792 SE2d 680) (2016) ("On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings, and we construe the complaint in a light most favorable to the [non-movant], drawing all reasonable inferences in his favor." (citations and punctuation omitted)). Further, questions concerning the

3

application of sovereign immunity are legal questions subject to de novo review. See *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 596 (2) (755 SE2d 184) (2014). The Court of Appeals, applying this de novo standard of review to the trial court's ruling, accurately recounted the pertinent allegations of McBrayer's complaint in its opinion:

> [McBrayer's] complaint alleges that, in April 2019, Tift County deputies tased and apprehended [the decedent]. The decedent's hands and feet were restrained, and the deputies allegedly placed him horizontally onto the back seat of a patrol car before leaving him unattended. The decedent then passed away while left unattended in the patrol car, and an autopsy revealed that he died as a result of excited delirium which was secondary to being tased. McBrayer, individually and as the decedent's surviving spouse and on behalf of the decedent's children, filed this wrongful death action against Scarbrough in his official capacity [as Tift County sheriff]. She claimed that the incident arose from the deputies' negligent use of a motor vehicle, as contemplated by OCGA § 36-92-2, and that the patrol car was a "covered vehicle," as that phrase is used in [OCGA §§] 33-24-51; 36-92-1; and 36-92-2. The complaint allege[s] that the deputies were negligent because (1) they placed the decedent face down in the back seat of the patrol car after having applied extreme force and restraint on him and left him unattended and unsupervised; and (2) they used the rear passenger door to hold a cobble strap that was attached to the decedent's feet.

4

*McBrayer*, 364 Ga. App. at 113. The record also shows that

Scarbrough admitted that he and the Tift County Sheriff's Office

were members of an Interlocal Risk Management Agency and that

the patrol car was a covered vehicle under an insurance policy.[2]

In Division 1 of its opinion, the Court of Appeals stated that

whether

> an event arises from the "use" of a motor vehicle depends
> largely on the circumstances, and a bright-line definition
> is elusive. But statutes that provide for a waiver of
> sovereign immunity . . . are in derogation of the common
> law and thus are to be strictly construed against a finding

---

[2] McBrayer filed suit on September 26, 2019, and Scarbrough answered on December 16, 2019. On December 7, 2020, Scarbrough filed a motion for a judgment on the pleadings. Thereafter, McBrayer filed a first amendment to the complaint and a response to Scarbrough's motion for a judgment on the pleadings. Scarbrough filed an answer to the amended complaint as well as a supplemental brief in support of his motion for a judgment on the pleadings. Paragraph 7 of the original complaint specifically alleged that McBrayer's death arose out of the use of the patrol car "as is contemplated by OGCA § 36-92-2." Paragraph 8 of the original complaint and Paragraph 2 of the amended complaint alleged that McBrayer's death occurred as the result of the sheriff's deputies' negligence in loading him into the patrol car and leaving him there unattended and unsupervised. In Paragraph 9 of the original complaint and Paragraph 3 of the amended complaint, McBrayer alleged that the deputies were acting within the scope of their official duties and employment; that Scarbrough was a member of an Interlocal Risk Management Agency; that a policy of automobile insurance covering the sheriff and his deputies was in full force and effect; and that the patrol car was a "covered motor vehicle" as that phrase is used in OCGA §§ 33-24-51, 36-92-1 and 36-92-2. In Scarbrough's answer to the amended complaint, he admitted that a policy of liability insurance was in effect and covered the patrol car in which the decedent died.

of waiver.

(Citation omitted.) *McBrayer*, 364 Ga. App. at 114 (1). Further, the Court of Appeals observed that, in those cases where it had found a waiver of sovereign immunity for the "use" of a motor vehicle, the vehicle was "actively in use when the injury arose" and whether sovereign immunity was waived depended on "whether the injury originated from, had its origin in, grew out of, or flowed from the use of the motor vehicle *as a vehicle*." (Citation omitted; emphasis in original.) Id. at 114. The Court of Appeals determined that, although the deputies were using the patrol car to confine and restrain the decedent, the car was not being used *as a vehicle.* Moreover, the deputies' act of "loading" the decedent into the patrol car did not necessarily mean that the vehicle was "actively in use" for purposes of waiving sovereign immunity. In Division 2 of its opinion, the Court of Appeals rejected McBrayer's argument that waiver of sovereign immunity is determined by whether the insurance policy covered the alleged event and confirmed that the relevant question was whether the vehicle was "in 'use' as a vehicle

6

in its ordinary sense." Id. at 118.

2. *Analysis*

At issue in this appeal is the meaning of the word "use," as it is employed in the phrase "use of a covered motor vehicle," in the text of OCGA §§ 33-24-51 and 36-92-2[3], for purposes of determining

[3] OCGA § 33-24-51 provides, in pertinent part and with the pertinent text emphasized, as follows:

    (a) A municipal corporation, a county, or any other political subdivision of this state is authorized in its discretion to secure and provide insurance to cover liability for damages on account of bodily injury or death resulting from bodily injury to any person or for damage to property of any person, or for both *arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation, county, or any other political* subdivision of this state under its management, control, or supervision, whether in a governmental undertaking or not, and to pay premiums for the insurance coverage.

    (b) The sovereign immunity of local government entities for a loss *arising out of claims for the negligent use of a covered motor vehicle is waived as provided in Code Section 36-92-2.* Whenever a municipal corporation, a county, or any other political subdivision of this state shall purchase the insurance authorized by subsection (a) of this Code section to provide liability coverage for the negligence of any duly authorized officer, agent, servant, attorney, or employee in the performance of his or her official duties in an amount greater than the amount of immunity waived as in Code Section 36-92-2, its governmental immunity shall be waived to the extent of the amount of insurance so purchased. Neither the municipal corporation, county, or political subdivision of this state nor the insuring company shall plead governmental immunity as a defense; and the municipal corporation, county, or political subdivision of this state or the insuring company may make only

7

whether sovereign immunity has been waived. Our analysis is

limited to the scope of the meaning of the word "use" in the context

those defenses which could be made if the insured were a private person.

OCGA § 36-92-2 provides, in pertinent part and with the pertinent text emphasized, as follows:

(a) The sovereign immunity of local government entities for a loss *arising out of claims for the negligent use of a covered motor vehicle* is waived up to the following limits: . . .

(3) $500,000.00 because of bodily injury or death of any one person in any one occurrence, an aggregate amount of $700,000.00 because of bodily injury or death of two or more persons in any one occurrence, and $50,000.00 because of injury to or destruction of property in any one occurrence, for incidents occurring on or after January 1, 2008.

(b) The sovereign immunity of local government entities for a loss *arising out of claims for the negligent use of a covered motor vehicle is waived only to the extent and in the manner provided in this chapter and only with respect to actions brought in the courts of this state.* This chapter shall not be construed to affect any claim or cause of action otherwise permitted by law and for which the defense of sovereign immunity is not available. . . .

(d) The waiver provided by this chapter shall be increased to the extent that:

(1) The governing body of the local governmental entity by resolution or ordinance voluntarily adopts a higher waiver;

(2) *The local government entity becomes a member of an interlocal risk management agency* created pursuant to Chapter 85 of this title to the extent that coverage obtained exceeds the amount of the waiver set forth in this Code section; or

(3) The local government entity purchases commercial liability insurance in an amount in excess of the waiver set forth in this Code section.

of those permissible purposes for which a covered vehicle may be employed. To answer the questions this Court posed in granting certiorari, we review the applicable law of sovereign immunity generally and as applied to Scarbrough. We conduct a textual analysis of the statutes at issue, applying the fundamental canons of statutory construction, and then we apply the statutes to the facts of this case.

(a) *Sovereign Immunity and Scarbrough's Immunity from Suit*

"As a general rule, counties enjoy sovereign immunity. The constitutional reservation of sovereign immunity to 'the State' [under Article I, Section II, Paragraph IX (e) of the Constitution of the State of Georgia] is a constitutional reservation of sovereign immunity to the counties of the State of Georgia." (Citations and punctuation omitted.) *Layer v. Barrow County*, 297 Ga. 871, 871 (1) (778 SE2d 156) (2015). See also *Gilbert v. Richardson*, 264 Ga. 744, 747 (2) (452 SE2d 476) (1994) (holding that, while the reservation of immunity clause of the Georgia Constitution, as amended in 1991, did not expressly refer to counties, "the 1991 amendment's extension

9

of sovereign immunity to 'the state and its departments and agencies' must also apply to counties" (citations omitted)); Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e) ("Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver."). See also Ga. Const. of 1983, Art. IX, Sec. II, Par. IX ("The General Assembly may waive the immunity of counties, municipalities, and school districts by law."); OCGA § 36-1-4 ("A county is not liable to suit for any cause of action unless made so by statute.").

Because Scarbrough was sued in his official capacity as sheriff of Tift County, he "enjoys sovereign immunity because styling a claim against a county officer in his official capacity is simply a way of pleading a claim against the county itself." (Citations omitted.) *Roberts v. Cuthpert*, ___ Ga. ___, ___ (2) (2023 WL 6065530, 2023 Ga.

LEXIS 207) (Case No. S23A0631, decided September 9, 2023). See also *Gilbert v. Richardson*, 264 Ga. at 746 n.4 (holding state's sovereign immunity extends to counties). Further, the "burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it." *Ga. Dep't of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016). Whether Scarbrough's immunity has been waived is a jurisdictional issue and not simply a defense to liability. See *McConnell v. Dep't of Labor*, 302 Ga. 18, 19 (805 SE2d 79) (2017) ("[T]he applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred.").

(b) *Waiver of Sovereign Immunity*

Code sections 33-24-51 and 36-92-2 both expressly provide for a waiver of a local government entity's sovereign immunity and the extent of such a waiver. OCGA § 33-24-51 (b) expressly states that "[t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle

11

is waived as provided in Code section 36-92-2." OCGA § 36-92-2 (a) states that "[t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived" up to specified monetary limits. OCGA § 36-92-2 (b) states that "[t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived only to the extent and in the manner provided in this chapter and only with respect to actions brought in the courts of this state." The plain language of these Code sections express a waiver of sovereign immunity for the negligent use of a covered motor vehicle. Thus, to answer the questions we posed to the parties, we must determine the scope of the meaning of the word "use" as employed in the context of these statutory provisions.[4]

With respect to how this Court should construe the meaning of

---

[4] We do not address whether the patrol car at issue is a "*covered* motor vehicle" as required by OCGA § 36-92-2 (a). Scarbrough has admitted that the patrol car was a covered motor vehicle as that phrase is used in OCGA §§ 33-24-51, 36-92-1, and 36-92-2.

"use" in the statutes, McBrayer argues that the word should be construed as broadly as it is employed in the county's insurance policy. Scarbrough, however, argues that "use" should be construed narrowly to avoid a waiver of sovereign immunity. As demonstrated below, we disagree with both arguments.

(c) *Applicable Rules of Statutory Construction*

Generally, when interpreting statutes, including statutes waiving sovereign immunity, the fundamental canons of statutory construction apply. See *Gilbert*, 264 Ga. at 747-748 (3). As we have explained,

> [a] statute draws its meaning . . . from its text. Under our well-established rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations and punctuation omitted.) *Patton v. Vanterpool*, 302 Ga. 253, 254 (806 SE2d 493) (2017). See also *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 693 (353 SE2d 186) (1987) ("Statutes

13

should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation."). Indeed, "where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning ends." (Citations and punctuation omitted). *Patton,* 302 Ga. at 254. Only if the text of the statute presents an ambiguity do we apply the canons of statutory construction applicable to resolving ambiguities.

(d) *The Meaning of "Use"* in OCGA §§ 33-24-51 and 36-92-2

In pertinent part, OCGA § 33-24-51 (b) waives the sovereign immunity of local government entities for losses "arising out of claims for the negligent use of a covered motor vehicle . . . as provided in Code Section 36-92-2." Code Section 36-92-2 (a) and (b) set financial limits on the extent of the waiver for losses "arising out of claims for the negligent use of a covered motor vehicle." Neither provision defines the word "use," nor is the word defined elsewhere in Chapter 92 of Title 36. See OCGA § 36-92-1 (definitions).

14

In ascertaining the ordinary meaning of a word that is not defined in a statute, it is often helpful to consult dictionaries that were in use when the statutes were enacted. Although dictionaries "offer a useful reference for any such analysis[,]" they "cannot be the definitive source of ordinary meaning in questions of textual interpretation because they are acontextual, and context is a critical determinant of meaning." (Citations omitted.) *State v. SASS Group, LLC*, 315 Ga. 893, 898-899 (2) (a) (885 SE2d 761) (2023). Nevertheless, they do provide a useful starting point.

Code section 33-24-51 was enacted in 1960 and amended in 1985 and 2002.[5] Code section 36-92-1 was enacted in 2002.[6] From 1960 through 2002, the meaning of the word "use" has remained constant. In both statutes, the word "use" is primarily employed as a noun. As a noun, the meaning of the word "use" has been defined as "the act or practice of employing something; employment."[7] As a

---

[5] See Ga. L. 1960, p. 289, § 1; Ga. L. 1985, p. 1054, § 1; Ga. L. 2002, p. 579, § 1.

[6] See Ga. L. 2002, p. 579, § 3.

[7] See, e.g., Merriam-Webster's Collegiate Dictionary 1378 (Eleventh Ed.,

15

transitive verb, the word has a similar meaning, "to put into action or service; avail oneself of; employ."[8] The word, in ordinary and natural parlance, is broad and subject to nuances in meaning based upon the context in which it is employed. For example, "use" embraces the employment of a thing in both expected and unexpected ways, for example, using a hammer to strike a nail or using a hammer passively as a paperweight or actively as a murder weapon.

The question here is what qualifies as the "use" of a "covered motor vehicle." If "use" carries its ordinary meaning in these

_____

(2003) (defining "use" as "[t]he act or practice of employing something; employment"); Webster's New Collegiate Dictionary 1288 (1973) (defining "use" as "the act or practice of employing something"); Webster's Seventh New Collegiate Dictionary 978 (1963) (defining "use" as "the act or practice of employing something; employment"); Webster's New Collegiate Dictionary 937 (1949) (defining "use" as the "[a]ct of employing anything or state of being employed; application; employment; as the *use* of a pen").

[8] See, e.g., Merriam-Webster's Collegiate Dictionary 1378 (Eleventh Ed., (2003) (defining "use" as "to put into action or service; avail oneself of; employ"); Webster's New Collegiate Dictionary 1288 (1973) (defining "use" as "[t]o put into action or service: avail oneself; employ"); Webster's Seventh New Collegiate Dictionary 978 (1963) (defining "use" as "[t]o put into action or service: avail oneself; employ"); Webster's New Collegiate Dictionary 937 (1949) (defining "use" as "[t]o convert to one's service; to avail oneself of; to employ; as to use a plow").

statutes, then an act is the "use" of a motor vehicle if a "covered motor vehicle" is being "employed" or "put into action or service." That definition of "use" in this context would certainly include employing vehicles as transportation of people and things; after all, that is the paradigmatic job of a "motor vehicle." But "use" of motor vehicles would naturally include other acts as well. For example, in common parlance, we would say that extracting a vehicle from a ditch is a "use" of a tow truck and putting out a fire is a "use" of a fire engine. In other words, the fact that transportation may be the most obvious "use" of a motor vehicle does not mean it is necessarily the only way a "covered motor vehicle" can be put in use.

As employed in the statutes, however, the meaning of "use" may not be so broad as to encompass every possible use because the scope and meaning of "use" is limited by its context. The word "use" is not employed in isolation; in both statutes, the word is employed in the phrase "for a loss arising out of claims for the negligent use of a covered motor vehicle." See OCGA § 33-24-51 (b) and OCGA § 36-

17

92-2 (a).[9] The meaning of the word "use" must be considered in the context of that phrase as well as in the context of the chapter. See *State v. SASS Group, LLC*, 315 Ga. at 900 (2) (b) ("[W]hen we determine the meaning of a particular word or phrase in a constitutional provision or statute, we consider text in context, not in isolation." (citation omitted)). See also OCGA § 36-92-1 (definitions). Scarbrough, however, has not identified any statutory text that supports a construction excluding any "use" beyond active transportation, and we see nothing in the chapter that suggests that "use" has a qualified or narrower meaning than its ordinary meaning. For example, a "covered" motor vehicle is defined as any motor vehicle owned, leased, or rented by the local government entity. See OCGA § 36-92-1 (2) (A), (B). "'Motor vehicle' means any automobile, bus, motorcycle, truck, trailer, or semitrailer, including its equipment, and any other equipment permanently attached thereto, designed or licensed for use on the public streets, roads, and highways of the state." OCGA § 36-92-1 (6). Notably, although the

---

[9] See footnote 3.

18

General Assembly defined "covered motor vehicle" in a way that limits the *types* of vehicles that qualify for a waiver of sovereign immunity, it did not limit the kinds of *uses* to which those vehicles could be put.[10]

In this case, we conclude that the General Assembly understood that the word "use" was broad enough to embrace uses of a motor vehicle that extend beyond mere transportation. If the

[10] We note that the General Assembly primarily imposes limitations on the waiver of sovereign immunity through its definition of the word "claim." A "claim" is defined in the chapter as "any demand against a local government entity for money for a loss caused by negligence of a local government entity, officer, or employee using a covered motor vehicle while carrying out his or her official duties or employment." OCGA § 36-92-1 (1). See also OCGA § 36-92-2 (b) ("The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived only to the extent and in the manner provided in this chapter and only with respect to actions brought in the courts of this state. This chapter shall not be construed to affect any claim or cause of action otherwise permitted by law and for which the defense of sovereign immunity is not available."); OCGA § 36-92-2 (c) ("Local government entities shall have no liability for losses resulting from conduct on any part of local government officers or employees which was not within the scope of their official duties or employment."); OCGA § 36-92-3 (a) ("Any local government officer or employee who commits a tort involving the use of a covered motor vehicle while in the performance of his or her official duties is not subject to lawsuit or liability therefor. Nothing in this chapter, however, shall be construed to give the local government officer or employee immunity from suit and liability if it is proved that the local government officer's or employee's conduct was not within the performance of his or her official duties.").

19

General Assembly had meant to limit the meaning of "use" to actively using a motor vehicle as a vehicle, it could have said so, but it did not. See *Couch v. Red Roof Inns*, 291 Ga. 359, 364 (729 SE2d 378) (2012) ("[W]hat a legislature normally does, if it wants to make sure that readers understand that a word with a broad ordinary meaning does not include something within that meaning, is to expressly define that thing out of the category."). Given the broad set of responsibilities a local government has, the General Assembly would have understood that the types of "motor vehicles" to which this statute would apply would include motor vehicles "designed or licensed" for purposes beyond active transportation. After all, this is a statute that allows suit against local governments for negligent use of government vehicles.

Applying this understanding of the term "use," we conclude that the alleged acts in this case involved the "use" of a "covered motor vehicle." McBrayer averred that Scarbrough's deputies detained the decedent in their patrol car — a use for which the vehicle was designed — and then left him prone across the back seat,

restrained by a cobble strap affixed to the patrol car door, during which time he died, allegedly from injuries sustained during his arrest. Under the plain language of the statutes at issue, McBrayer has asserted a "use" of the patrol car sufficient to waive sovereign immunity. Further, "loading" the decedent into the back of the patrol car was inherently a part of the detention process because the decedent could not have been detained inside the patrol car without having been "loaded" inside it by the deputies. Thus, the answers to the questions we posed when granting certiorari are as follows: In this case, the "use" of a motor vehicle as provided in OCGA §§ 33-24-51 (b) and 36-92-2 is not limited by the terms "actively in use" "as a vehicle." Further, loading a person into and restraining a person in a patrol car constitutes a "use" of a patrol car as to which sovereign immunity is waived under OCGA §§ 33-24-51 (b) and 36-92-2.

By reading into the statutes the terms "actively" and "as a vehicle," the Court of Appeals altered the plain meaning of "use" and restricted the scope of the local government's waiver of sovereign immunity. Therefore, we overrule that court's precedent construing

21

"use" of a motor vehicle in OCGA § 33-24-51 (b) and OCGA § 36-92-2 (a) as being limited to the "active" use of the motor vehicle "as a vehicle."[11]

(e) *Scarbrough's Insurance Policy*

McBrayer argues that, for purposes of waiving sovereign immunity, the General Assembly's statutory definition of "use" was to be determined with reference to the applicable policy of insurance in effect when the loss allegedly occurred. We disagree. Prior to 2005, a county had "the discretion to buy liability insurance for damages arising from the use of any motor vehicle" under OCGA § 33-24-51, which, at that time, provided "a limited waiver of their governmental immunity to the amount of the insurance purchased." *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001). "As a result, courts had to analyze the applicable insurance policy to

---

[11] See, e.g., *City of Roswell v. Hernandez-Flores*, 365 Ga. App. 849, 853-854 (880 SE2d 340) (2022); *McBrayer*, 364 Ga. App. at 115 (1); *Wingler v. White*, 344 Ga. App. 94, 101 (1) (808 SE2d 901) (2017); *Columbus Consolidated Govt. v. Woody*, 342 Ga. App. 233, 238 (802 SE2d 717) (2017); *Bd. of Commrs. of Putnam County v. Barefoot*, 313 Ga. App. 406, 408-409 (1) (721 SE2d 612) (2011); *Gish v. Thomas*, 302 Ga. App. 854, 861 (2) (691 SE2d 900) (2010); *Williams v. Whitfield County*, 289 Ga. App. 301, 305 (656 SE2d 584) (2008).

determine whether the policy covered the particular claim at issue and thus waived sovereign immunity, and to what limit." *Atlantic Specialty Ins. Co. v. City of College Park*, 313 Ga. 294, 299 (2) (869 SE2d 492) (2022). In 2002 (although not effective until 2005), the General Assembly amended OCGA § 33-24-51 and added OCGA § 36-92-2 to create what we described as a "two-tier" system establishing waivers of sovereign immunity by a local government for losses arising out of claims for the negligent use of covered motor vehicles. *Gates v. Glass*, 91 Ga. 350, 352-353 (729 SE2d 361) (2012). Under that system, a local government automatically waives sovereign immunity for such losses up to certain prescribed limits and also waives sovereign immunity for such losses in excess of the prescribed limits to the extent it purchased liability insurance for losses in excess of those limits. Id. In *Atlantic Specialty Ins.*, we explained that the statutory amendment creating an automatic waiver of sovereign immunity up to a specified amount necessarily displaced prior law concerning waivers up to that specified amount:

> [T]he enactment of the automatic immunity waiver

23

in 2002 changed only the analysis with respect to a loss *under* the applicable automatic waiver limit, as to which the local government entity's purchase of liability insurance is irrelevant. Because of the automatic waiver, there is no dispute in this case that [the sheriff's] sovereign immunity was waived up to $700,000. But to increase the waiver of sovereign immunity *beyond* $700,000, the analysis remains the same as under the pre-2002 law: the court must determine whether the [government entity], in its discretion, purchased commercial liability insurance in excess of $700,000 that covers the claim at issue.

(Emphasis in original.) Id. at 300 (2). Likewise, because of the automatic waiver, whether Scarbrough's sovereign immunity was waived up to the monetary limits applicable to this case depends on whether McBrayer's complaint asserts a claim pursuant to OCGA §§ 33-24-51 and 39-92-2 for the negligent use of a covered motor vehicle. Consequently, although the county has purchased automobile liability insurance in this case, we do not look to provisions of the county's insurance policy to determine whether McBrayer's complaint asserts a claim for the negligent use of a motor vehicle for purposes of Scarbrough's motion for a judgment on the pleadings.

Accordingly, we reverse the judgment of the Court of Appeals and remand the case to that court.

*Judgment reversed and case remanded. All the Justices concur.*